'GARRIT H. STRIKER *v.* WINIFRED MOTT·and others.

By a will made in 1815 the testator devised all his real estate to his three grandchildren, G. H., A. and W., in fee, to be disposed of by his executors &c. as follows: "The said real estate shall not, at any time hereafter, be sold or alienated; but my said executors, or the survivor of them, &c., shall from time to time lease or rent the same on such terms as they shall deem most advantageous to my said heirs, and the rents, issues and profits of the same shall be annually paid by my said executors &c. to my said heirs, in equal proportions; and if either of my said heirs, or their children, shall choose to occupy any part of my said real estate, he, she or they shall have a preference to any other applicant, on paying a reasonable rent for the same." It was then declared that if any of his grandchildren should die without issue, the share of the one so dying should go to the survivors or survivor, and the heirs of such survivor, forever. Also that his wife, during her widowhood, should occupy his dwelling house together with five acres of land adjoining, which, together with the fences, was to be kept in repair by the executors. At the date of the will W. had several children. The other grandchildren were unmarried. The testator had then no other descendants. After the death of the testator a partition of the land between the devisees was had, under the order of the court, and mutual deeds of release were executed by them, and they thereafter enjoyed in severalty according to the partition. A., one of the devisees, died, without issue, in 1860, leaving a will, by which she devised all her estate to S. and others.

*Held,* 1. That taking the will all together, the successive estates in each third part of the land were limited as follows: (1.) To the trustees, for the life of the grandchild for whose benefit that one third was devised, remainder to the issue of that grandchild, if he or she should have issue, in fee; but if he or she should die without issue living at his or her death, (which last qualification resulted from the subsequent limitation to the *survivor* of the *grandchildren,*) then (2.) Remainder to the grandchildren and the survivor of them.

2. That this second remainder was contingent, though it would have been vested, if the first remainder had been for any estate less than a fee simple.

3. That hence G. H. and W. had no estate which they could convey to A. by their partition deed; and hence also, the devisees of A. took nothing by the devise in their favor, contained in her will.

APPEALS from the Supreme Court. John Hopper died in 1819. The material provisions of his will were as follows: "I give all my real estate to my three grandchildren, Garrit H. Striker, Ann Striker, and Winifred the wife of Jordan Mott, and their heirs, forever. The said real estate so devised to my said grandchildren to be disposed of as follows, by my executors hereinafter named, and the survivor of them, or the executors or administrators of such survivor, that is to say: the said real estate shall not at any time hereafter be sold or alienated; but my said executors and the survivor of them, or the executors or administrators of such survivor, shall from time to time lease or rent the same on such terms and for such rent as they may deem most advantageous to my said heirs, and the rents, issues and profits of the same shall be annually paid by my said executors and the survivor of them, or the executors or administrators of such survivor, to my said heirs in equal proportions; and if either of my said heirs, or their children lawfully begotten, shall choose to occupy any part of my said real estate, he, she or they shall have a preference to any other applicant, on paying a reasonable rent for the same. And in case any of my said heirs and devisees shall die without lawful issue, then and in such case my will is, that the share of the one so dying shall be and enure to the sole use, benefit and behoof of my said grandchildren, and the survivor of them, and the heirs of such sur-

vivor, forever." He further provided that his wife, during her widowhood, should occupy his dwelling house together with five acres of land adjoining, "which, together with the fences, shall be kept in repair by my said executors," &c. He appointed three executors. At the date of the will Mrs. Winifred Mott had several children. The other two grand-children were unmarried. The testator then had no other descendants.

Soon after Hopper's death his granddaughter Ann Striker filed a petition in the New York Mayor's Court, under the partition act of 1813. (2 R. L. 507.) Her brother and sister were made parties to this proceeding, but the executors were not parties. Partition of all the lands now in question was ordered and made accordingly, by consent of the defendants. Mutual deeds of release were thereupon executed. The releases recited the devise to the grandchildren, but no other part of the will. They also recited the proceedings in partition, but they contained no express covenants nor any words from which a covenant could be implied. The grandchildren thereafter enjoyed in severalty, according to the partition. Ann Striker died without issue in 1860. By her will she devised all her estate to E. J. Swords and others. All Hopper's executors having died, J. B. Wilson was appointed trustee in their place. Garrit H. Striker, after the death of his sister Ann Striker, brought his action for partition in the Supreme Court against Mrs. Mott and Wilson, the trustee, claiming that on the death of Ann Striker without issue the third part of Hopper's estate became vested in himself and his sister Mrs. Mott, in fee simple, by virtue of the limitation over in Hopper's will. Swords, the executor, and the other devisees of Ann Striker, brought a cross action, claiming that she took under the will a fee simple. Wilson, the trustee, brought another action, to establish the trusts of Hopper's will. He admitted the title of Garrit H. Striker, with a single qualification. He insisted that by a proper construction of Hopper's will the executors of Hopper took a

trust term in *all* the shares, until the death of the last sur-
vivor of the three grandchildren.

The Supreme Court in the first district gave judgment in
the three actions, in favor of Garrit H. Striker. The devi-
sees of Ann. Striker appealed to this court. Wilson, the
trustee, also appealed. (See *Striker* v. *Mott*, 2 Paige's Ch.
387 ; *Brewster* v. *Striker*, 2 Comst. 19.)

Both appeals were argued in 1862, and in December of
that year the judgments of the Supreme Court were affirmed,
SMITH, J. dissenting from the decision on the trustee's ap-
peal, and holding with the trustee on the point made by him.
A motion was heard in the March term of 1863 for a re-
hearing, which, in the June term of the same year, was
denied.

*Alexander .W. Bradford, Alexander S. Johnson* and
*Daniel Lord,* for Ann Striker's devisees.

*Gilbert M. Speir,* for Wilson, the trustee.

*David Dudley Field,* for the respondent Winifred Mott.

*Charles O'Conor,* for the respondent Garrit H. Striker.

DENIO, Ch. J.   The general question in these cases is
whether Ann Striker was seised, at the time of her death, of
an estate of inheritance in the premises in controversy.   John
Hopper, who died in the city of New York in August, 1819,
was, in his lifetime and at the time of his death, the owner
in fee of a farm on Manhattan island, now in the vicinity of
Fiftieth street, of which the premises in question are a part.
By his will, executed about four years before his death, he
devised to his three grandchildren, namely, the said Ann
Striker, Garrit H. Striker and Winifred Mott, "and their
heirs forever," (they and the children of one of them being
his only descendants then living,) all his "real estate," in the

city and county of New York; adding, "The said real estate so devised to my said grandchildren to be disposed of as follows, by my executors hereinafter named, and the survivor of them, or the executors or administrators of such survivor, that is to say: the said real estate shall not at any time hereafter be sold or alienated; but my said executors and the survivor of them, or the executors or administrators of such survivor, shall from time to time lease and rent the same on such terms, and for such rent, as they may deem most advantageous to my said heirs, and the rents, issues and profits of the same shall be annually paid by my said executors and the survivor of them, or the executors or administrators of such survivor, to my said heirs in equal proportions." There is then a provision that the devisees or their children shall have the preference as lessees. After a disposition of the personal estate and some provisions not immediately material, there is the following clause: "And in case any of my said heirs and devisees shall die without lawful issue, then and in such case my will is that the share of the one so dying shall be and enure to the sole use, benefit and behoof of my said grandchildren and the survivor of them, and the heirs of such survivor forever." Three persons were appointed executors, all of whom are dead, but proceedings have been had in the Supreme Court to supply the failure of trustees, under which proceedings James B. Wilson is the present trustee.

In October, 1820, Ann Striker presented to the court of common pleas, called the Mayor's Court of the city of New York, a petition for partition of the aforesaid farm, she claiming to be seised as a tenant in common of an undivided third part thereof, alleging that Garrit H. Striker and Winifred Mott, the two other grandchildren, were each seised of an undivided third part as such tenants. They put in an answer admitting the matter of the petition, and "freely consented" that partition should be made according to the prayer of the petition. Three persons were accordingly ap-

pointed commissioners, who, on the 7th of March, 1821, made their report, which was duly proved and filed, dividing the farm into three parts described by metes and bounds, and setting off in severalty one of the parts to each of the alleged tenants in common. The court thereupon gave judgment confirming the partition and report, and adjudging that they should be firm and effectual forever between the parties, and the record was afterwards duly signed and filed. On the 18th day of April, 1821, partition deeds were executed between the parties for the respective parcels allotted in severalty to each of the devisees. The deed to Ann Striker is executed by Garrit H. Striker and his wife, Winifred Mott and her husband Jordan Mott, and by Jacob C. Mott, who was alleged to have acquired title to the life estate of Jordan Mott as tenant by curtesy. This instrument recites so much of the will of John Hopper, deceased, as shows a devise in fee of his real estate to the three grandchildren, making express reference to it, and to the proceedings and judgment in partition in the Mayor's Court, by which the premises particularly embraced in the operative part of the deed were allotted in severalty to Ann Striker, and proceeds thus: "And whereas the said parties of the first part, in consummation of said partition and for settling all questions relative to said premises and the partition and division thereof, have agreed to execute to the said party of the second part and her heirs and assigns forever, a release of all the premises so set apart and allotted to her by the said commissioners as aforesaid. Now, therefore, this indenture witnesseth, that for the true intent and purposes aforesaid, and for making a free, perfect and effectual partition and division of the said premises, and for the more effectual confirming and securing to the said party of the second part, (Ann Striker,) her heirs and assigns forever, the part and share so as aforesaid allotted and assigned by the said commissioners ; and for and in consideration of the sum of one dollar in hand paid by the said party of the second part, at or before the ensealing and de-

livery of these presents, the receipt whereof is hereby ac-
knowledged, and the said parties of the first part therewith
fully satisfied, contented and paid, have, and each of them
hath, remised, released and forever quit-claimed, and by these
presents do, and each of them doth, remise, release and for-
ever quit-claim unto the said party of the second part, and
to her heirs and assigns forever, all and singular the premises
hereinbefore mentioned &c., together with all and singular
the hereditaments and appurtenances thereunto belonging or
in anywise appertaining, and the reversion and reversions,
remainder and remainders, rents, issues and profits thereof,
&c. and also all the estate, right, title &c., as well in law as
in equity, &c." The instrument was duly acknowledged and
recorded.

Ann Striker duly executed her last will and testament on
the 16th day of February, 1853, by which she devised specific
portions of the premises allotted and quit-claimed to her, to
several devisees, and all the residue of her real estate to her
executors, to apply the rents and profits to the use of Jemima
Swords during her life, with remainder to her children. The
devisees under the will are represented by the plaintiffs in
the last of these suits. Ann Striker died without issue, in
April, 1860. From the date of the judgment in partition
down to her death, the three devisees possessed and occupied
the premises in severalty, according to the partition and the
quit-claim deed, the executors or ·trustees never before or
afterwards interfering with or exercising any authority re-
specting them. Garrit H. Striker was examined in his own
behalf and on the part of the persons having a similar inter-
est, and testified (against the objection of the parties claim-
ing in opposition to them, who excepted) as follows: "At
the time of the partition I supposed I had a title in fee to
the one undivided third of the premises. My sisters Ann
and Winifred supposed they each had a title in fee to the one
undivided third part of the same premises."

The Supreme Court determined against the claim of the

devisees of Ann Striker, holding that she had no estate in the premises of which John Hopper died seised, in her life-time; and as to the judgment in partition and the partition deeds, that their only effect was to adjust the share of the rents and profits to which the devisees would respectively be entitled during their lifetimes; and that if, by their terms and legal effect, they would take a greater interest under the judgment and deeds, they ought to be deemed void in equity and be vacated and annulled accordingly. This last adjudication was based upon a finding in matter of fact, that the judgments and deeds were had and executed under a mistaken impression and belief of the grandchildren that they were entitled to the premises in fee simple, as tenants in common of three equal undivided shares in the premises.

Certain points have been settled under this will, in this court and the Court of Chancery, which ought not now to be made the subject of renewed discussion. Prior to 1844 the interest of Garrit H. Striker in the premises was sold on execution issued upon a judgment against him, and the purchaser brought ejectment upon that deed, and the case was finally decided in this court in 1848, when it was held that the plaintiff was not entitled to recover, on the ground that Striker had no estate upon which the judgment could operate as a lien. It was held that the grandchildren took no immediate legal estate, the executor of John Hopper taking such estate, as trustee, by implication. (*Brewster* v. *Striker*, 2 Comst. 19.) As the only impediment to the estate of Striker was the implied estate of the executor, the legal existence of such estate in the executors in the whole of the premises embraced in the devise to the grandchildren must be considered as established. The operation of the judgment in partition, and of the quit-claim deeds upon the future estates to arise upon the deaths of the grandchildren or any of them, was not then directly in question, as they were then all alive, and consequently these estates had not come into existence. It may equally be considered as

settled, that, at the time of the proceedings in partition in the Mayor's Court, the state of the law did not allow suits in partition to be entertained between parties seised in reversion or remainder, or entitled to future estates by way of executory devise. That point was decided by the Court of Chancery in an attempt to effect partition of a part of the land devised by this will to the grandchildren whose estates are now before us, in the year 1831. (*Striker* v. *Mott*, 2 Paige, 387.) It was also there, as in the case in this court, held that partition could not be made between the grandchildren, of their present interest in the premises, because it was considered that the legal title was in the executors as trustees. But the former judgment in partition, in the Mayor's Court, and the mutual releases were not introduced into that case. I presume that the property respecting which partition was then sought was not embraced in those former proceedings. But that adjudication, assuming as I do that it was a correct exposition of the statute, did not determine the effect of the judgment in partition by confession of 1821, when introduced collaterally.

With a view to dispose of another subject, upon which I do not think any controversy can be made, I mention that I concur in that part of the judgment of the Supreme Court in the present case, by which it is determined that the estate of the executors or trustees ceased upon the death of Ann Striker, as to the one third of the estate devised for her benefit. And it is not material to consider separately the effect of the judgment in partition upon the future estates created by the will of Hopper, for I am of opinion that any objections which may be alleged against the effect of the releases would apply with at least equal force to the judgment in partition; so that if the releases can not be sustained, the judgment in partition will be equally inoperative. The deeds, if otherwise effectual, would not be prejudiced by the circumstance that they were executed with a view to confirm the partition mentioned in the judgment. They were

executed, apparently for greater caution, and have all the effect which such quit-claim deeds between these parties would have if unconnected with any attempt to make partition in court. These cases therefore depend wholly upon the effect to be attributed to the deeds, or rather to the deed to Ann Striker, which is the only one which it is material to consider. This deed besides being so far as the language is concerned a perfect release, is also a good conveyance by way of bargain and sale under the statute of uses. This results from the pecuniary consideration which the parties were careful to have inserted in it. The question then is, whether Ann Striker was so situated in respect to the estates created by the will in these lands, as to be capable of receiving a release of the future estates to arise upon her death, in the one third part devised for her benefit. She had no present legal estate, absolute or conditional. The executors were seised of an estate for her life, and she was entitled in equity to the rents and profits. If the remainder to take effect upon her death, and the consequent termination of the estate in the executors, is considered as limited to her heirs, by force of the first clause of the will, still the rule in *Shelly's case* will not apply, for two reasons: First. The precedent estate and that in remainder are not of the same quality, the first being equitable and the other legal. (2 Jarman on Wills, 244.) Again, it would be hostile to the plain intentions of the testator that the several grandchildren should take estates in fee, since he has expressly provided that the property should not be sold or alienated. If the grandchildren took estates in fee, the power of alienation would necessarily attach to such estates. The cases in England generally admit that a clear intention on the part of the testator that the immediate devisee should take only a life estate, would preserve the remainder and prevent the vesting of the fee in the first devisee, though difficulties have arisen in deducing such an intention from particular language; but where the devise of the primary estate is in trust, and the remainders are legal

estates, and there is besides an explicit prohibition of the right to sell, no doubt as to the intention can be entertained. (Hargrave's Law Tracts, 489.) Assuming, then, that the grandchildren did not take estates in fee, the question recurs as to the effect of the quit-claim deeds upon the future estates to arise upon the death of the grandchilden, or any of them, without issue. I am of opinion that the deed to Ann Striker could not have any effect by way of release, because the releasee had no estate which it could operate to enlarge. (See *Miller* v. *Emans*, 19 N. Y. Rep. 384, per SELDEN, J.) Her possession was the possession of the trustees in whom the legal title was. It could not operate by way of estoppel, so as to preclude the releasors from claiming the estate when it should devolve upon them by the happening of the contingency upon which it was limited, for there was no covenant of warranty. I do not see why it would not operate as a conveyance by way of bargain and sale, if Garrit H. Striker and Mrs. Mott had a vested estate which could be conveyed. The words *remise, release* and *quit-claim*, accompanied by a pecuniary consideration, have always been considered sufficient to pass any estate which the persons executing the instrument then had. (*Jackson* v. *Fish*, 10 John. 456.) A great many titles are held under such conveyances, and I am satisfied that no other words are necessary to pass an existing title. But Mr. Striker and Mrs. Mott had not, nor had either of them, any vested estate in these premises. The remainder, limited to the surviving grandchildren upon the event of the death of one of them *without* issue, was contingent and not vested. At the time of the execution of the partition deeds, it was not only uncertain when the remainder would vest in favor of such of them as should survive the others, but, as the issue of the grandchild dying was to take preferably to the surviving grandchildren, it was uncertain whether any estate in remainder would ever arise in their favor.

Taking this will altogether, I understand the successive

estates in each third part of the land to be limited as follows: First. To the trustees for the life of the grandchild for whose benefit that third was devised, remainder to the issue of that grandchild, if he or she shall have issue, in fee; but if he or she shall die without issue living at his or her death, (which last qualification results from the subsequent limitation to the *survivor* of the *grandchildren*,) then remainder to the grandchildren and the survivor of them. Second. This second remainder is contingent, though it would have been vested if the first remainder had been for any estate less than a fee simple. (Fearne on Rem. 225.) Hence Garrit H. Striker and Mrs. Mott had no estate which they could convey to Ann Striker by the deed under consideration; and hence, also, the devisees of the latter took nothing by the devise formally made in their favor.

I think, therefore, that the judgments given upon the appeals in these cases were correct, and that the motion for a re-argument should be denied.

All the Judges concurring, the motion for a rehearing was denied.