JAMES M. SMITH, Grantor, etc., Respondent, *v.* JOSEPH. A. SCHOLTZ et al., Appellants.

68   41
140  540

*It seems* that an order, in proceedings for the sale by a general assignee in bankruptcy of the property of the bankrupt, directing the sale of the right, title and interest, etc., of the bankrupt, is sufficient; it is not necessary that it should direct the sale of the right, title and interest which the assignee acquired by the decree in bankruptcy.

As to whether Rule 70 of the United States District Court for the southern district of New York, providing that all notices of proceedings in bankruptcy required to be published shall be inserted in at least three of certain papers named, applies to notices of sale by general assignees in bankruptcy, *quære.*

Where, in an action involving a title to real estate acquired under a sale by an assignee in bankruptcy, no objection is made to the sufficiency of the publication of notice of sale, and no finding or request to find upon the subject, the question cannot be considered here.

The assignee in bankruptcy of J. sold and conveyed all the right, title and interest of said bankrupt in a certain farm, in the city of New York. At the time of the adjudication in bankruptcy, the interest, if any, which J. had in the farm was an estate in remainder in an undivided share of the farm; said farm had been laid out into lots and avenues and streets. After the termination of the precedent estate, an action for partition was commenced, resulting in a decree whereby certain lots, part of said farm, were set off as J.'s share in severalty. The assignee in bankruptcy was not made a party to the partition suit; the sale made by him was after judgment therein. In an action of ejectment by the purchaser, it was objected that the assignee should have sold in parcels, and should have sold the interest of J. in the lots allotted to him. *Held,* that, assuming the sale should have been similar to a sale under a decree in equity, silent as to the manner of sale, it could not be attacked collaterally and held absolutely void; also, that the assignee was not bound by the partition to which he was not a party; and, if he did not elect to affirm it, he had the right to sell the undivided interest of the bankrupt.

The provision of the Revised Statutes (1 R. S., 739, § 147), declaring a grant of land void if, at the time, the land shall be in the possession of a person claiming an adverse title, does not apply to a judicial sale and conveyance thereunder.

The will of H., after a devise of all his real estate to his three grandchildren, G., A. and W., and their heirs, contained the following: "The said real estate shall not at any time hereafter be sold or alienated, but my said executors * * * shall, from time to time, lease or rent the same, * * * and the rents, issues and profits shall

be annually paid by my said executors * * * to my said heirs, in equal proportions." In case of the death of any of said grandchildren without issue, it was provided that the share of the one so dying should go "to my said grandchildren, and the survivor of them, and the heirs of such survivor forever." At the date of the will, and at the death of the testator, W. had several children, one of whom was J., the bankrupt above mentioned, who was adjudged a bankrupt after the testator's death, and during the life of W. Plaintiff claimed under a sale of the interest of J., by the assignee in bankruptcy; defendant S. claimed under a subsequent deed from J. *Held*, that as in a former decision of this court (*Striker* v. *Mott*, 28 N. Y., 82), wherein the question was involved, a construction was put upon these provisions of the will, which has become, so far as this estate is concerned, a rule of property, that decision would not be changed; also, that the court concurred in the prior decision, to wit: That, by the will, successive estates in each third part were limited as follows : 1st. To the trustees for the life of the grandchild for whose benefit that third was devised. 2d. Remainder to the issue of that grandchild, if he or she should leave issue, in fee. · 3d. If the grandchild should die without issue living at his or her death, then remainder to the other grandchildren, or the survivor of them. That the grandchildren had no power of disposition, and took no estate in the lands, but simply an equitable interest under the trusts. Also, *held*, that the remainder to the issue of W. was vested, not contingent; that the same was alienable, and could pass to a general assignee in bankruptcy during the life of W.; and that the interest of J. did so pass.

As to whether plaintiff is entitled to recover possession of any particular parcel in severalty, the assignee in bankruptcy having disregarded the partition, and sold the undivided interest of J. in the entire farm, *quære*.

Where lands are devised to a man and his heirs, with remainder to one who would be a collateral heir of the first devisee, the word heirs will be construed to mean issue.

The rule in Shelley's case is not applicable where the estate of the first taker is equitable and that of the remainder-men legal.

Where there is a future devise to children or issue, with a substituted devise in case they die during the precedent estate, the devise vests as soon as a child is born, subject to let in after-born issue, and to be divested as to any of such issue who may die during the continuance of the precedent estate.

(Argued June 15, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiff entered upon the report of a referee.

This was an action of ejectment, brought to recover possession of certain lots in the city of New York, formerly part of what was known as "the Hopper farm." Both parties claim under the will of John Hopper, who died seized of this farm, leaving a will in and by which his real estate was disposed of as follows:

"Secondly. — I give, devise and bequeath unto my three grandchildren namely, Garret Hopper Striker, Ann Striker and Wyntie Mott, wife of Jordan Mott, and their heirs forever, all my real estate, wheresoever and howsoever situate. The said real estate so devised to my said grandchildren to be disposed of as follows by my executors hereinafter named, and the survivors of them, or the executors or administrators of such survivors, that is to say : the said real estate shall not at any time hereafter be sold or alienated but my said executors, or the survivors of them, or the executors or administrators of such survivor, shall from time to time lease or rent the same on such terms and for such rent as they may deem most advantageous to my said heirs, and the rents issues and profits of the same shall be annually paid by my said executors, and the survivors of them, or the executors or administrators of such survivor, to my said heirs in equal proportions, and if either of my said heirs, or their children, lawfully begotten, shall choose to occupy any part of my said real estate, he, she or they shall have a preference to any other applicant on paying a reasonable rent for the same."

A subsequent clause in the will was in these words: " And in case any of my said heirs and devisees shall die without lawful issue, then and in such case my will is that the share of the one so dying shall be and inure to the sole use, benefit and behoof of my said grandchildren and the survivor of them, and the heirs of such survivor forever."

The provisions of this will were passed upon by the Court of Chancery in *Striker* v. *Mott* (2 Paige, 387) and by the Court of Appeals in *Brewster* v. *Striker* (2 Comst., 19), also in *Striker* v. *Mott* (28 N. Y., 82).

Said John Hopper left him surviving the three grand-

children, who were mentioned in his will and who were his only heirs at law. Said Garret H. Striker married after the death of John Hopper and had issue ; said Ann Striker died in 1860 unmarried and leaving no issue ; said Winifred Mott was married, and by such marriage had seven children, all of whom were living at the time of the death of Hopper, one of whom was Jordan Mott. On the 27th day of January, 1843, said Jordan Mott was adjudged a bankrupt under and in pursuance of the bankrupt act then in force.

Prior to the year 1851, avenues and streets of the city of New York had been laid out and located over the whole of the "Hopper farm," and in January, 1851, a city surveyor, made a map of said "farm" and divided the same into city lots which map was entitled "Map of property situate in the nineteenth ward of the city of New York, belonging to the heirs of John Hopper, deceased" and was filed in the register's office of the city and county of New York.

Said Winifred Mott died on the 16th day of March, 1862, leaving her surviving, the aforesaid Jordan Mott, and three other sons who were her only heirs at law.

On the 17th day of October, 1863, the aforesaid Garret H. Striker commenced an action in the Supreme Court for a partition of the said Hopper farm, claiming, among other things, that under the decision in 28 New York, 82, one-third of said Hopper farm vested in fee simple, upon the death of Ann Striker, in him, and his sister Winifred Mott, and that upon the death of said Winifred Mott, one-third of said Hopper farm vested in fee simple under and by virtue of the provisions of the will of John Hopper aforesaid in her four sons, then surviving her as aforesaid. The assignee in bankruptcy of Jordan Mott was not made a party to the partition suit, nor did he appear therein.

On or about the 10th day of January, 1865, a judgment was entered in said suit whereby a partition of said Hopper farm was decreed among the parties thereto, and by said judgment there was partitioned and set apart to Jordan Mott, as his portion of said farm, the premises described in the complaint.

Subsequently to said judgment, said Jordan Mott made a conveyance of said premises, and the defendant, Joseph A. Scholtz, claimed to be the owner thereof under and by virtue of said conveyance.

On or about the 13th day of June, 1868, an order was made, by the United States District Court, in bankruptcy, in the proceeding in the matter of the bankruptcy of Jordan Mott aforesaid, by which order the general assignee in bankruptcy aforesaid, was directed to sell at public auction all the right, title, interest, property, claim and demand whatsoever, whether in law or in equity, of the said Jordan Mott, of, in and to any and all real estate in any manner described or referred to in the will of John Hopper, describing the same by metes and bounds, and among other property, the Hopper farm aforesaid.

On or about the 11th day of September, 1868, in accordance with said order, said assignee sold and conveyed to plaintiff all the right, title and interest which said Jordan Mott had, and which he, the said assignee, had in the real estate aforesaid. Further facts appear in the opinion.

*William Fullerton* and *George F. Comstock* for the appellants. The sale by the assignee was void, the notice of sale not having been published according to the requirements of the bankrupt law. (Bankrupt Law of 1841, §§ 6, 7; U. S. District Court Rules, 62, 70; *In re Livingston*, 2 Abb. [N. S.], 286; *Walker* v. *Ducios*, 18 La. Ann., 703; *Harrison* v. *McCue*, 43 Cal., 178; *Scott* v. *Young American*, 1 Newbury [Mich.], 107; *Burt* v. *Place*, 4 Wend., 591; *Armstrong* v. *Percy*, 5 id., 535; *Ritchie* v. *Putnam*, 13 id., 524; *Williams* v. *Wood*, 14 id., 126; *Dresser* v. *Brooks*, 3 Barb., 429; *Bk. Charleston* v. *Emerick*, 2 Sandf., 718; *Onderdonk* v. *Voorhis*, 2 Rob., 623; *Robert* v. *Good*, 36 N. Y., 408; *Duncan* v. *Dubois*, 3 J. Cas., 135; *High* v. *Wilson*, 2 J. R., 476; *Bloom* v. *Burdock*, 1 Hill, 130; *Thatcher* v. *Powell*, 6 Wheat., 119; *Jackson* v. *Estey*, 7 Wend., 148.) The order of sale conferred no authority upon the general assignee to dispose of

the bankrupt's property, because it was made by the district judge, and not by the court. (Bankrupt Law 1841, § 9.) The real estate having been divided into lots, each lot should have been sold separately. (§ 47, art. 2, tit. 5, chap. 6 of part 3, R. S.; Conkling's Treatise, chap. 7, p. 317; 4 U. S. Stat. at Large, chap. 68, p. 278.) The bankrupt took an estate in fee simple absolute under the will of John Hopper in the real estate devised. (*Pells* v. *Brown*, Cro. Jac., 590; *Jackson* v. *Anderson*, 16 J. R., 382; *Striker* v. *Mott*, 2 Paige, 387; *Brewster* v. *Striker*, 2 N. Y., 19.) There was nothing in the trust provision in the will of John Hopper which affected the fee of the real estate as limited to the three grandchildren and their heirs. (*Brewster* v. *Striker*, 2 N. Y., 19; *Wendell* v. *Crandall*, 1 id., 491; 2 Den., 23; 4 Kent's Com., 205; 2 Washb. on R. E., 547 [m. p. 228].) The rule in Shelley's case is not applicable in a case where there is no remainder to heirs, but the remainder is to the ancestor and his heirs. (*Striker* v. *Mott*, 28 N. Y., 82; 1 R. S., 725, § 28; *Campbell* v. *Rawdon*, 18 N. Y., 420; Fearne on Remainders, 28, 29; 1 Jarman on Wills, 465, 1 Washb. on R. E., 105 [m. p. 78]; 2 id., 490 [m. p. 182]; *Hileman* v. *Bouslaugh*, 13 Penn. St., 344.)

*Douglas Campbell* and *E. W. Paige* for the respondent. The will of John Hopper gave to Jordan Mott as a purchaser an estate in remainder in the share devised to the trustees for the benefit of his mother. (*Un. Nat. Bk.* v. *Kupper*, Ct. App., Nov. 9, 1875; *Striker* v. *Mott*, 28 N. Y., 82–93; *Brewster* v. *Striker*, 2 id., 19; Wms. on R. P., * 244–247 [4th Am. ed.]; 3 Kent's Com., 506; 2 Black. Com., 56, 72, 91, 287; Sullivan's Lectures, L, XI, XV; *Burgess* v. *White*, 1 Eden, 191, 242; *Campbell* v. *Rawdon*, 18 N. Y., 420; 2 Washb. R. P., 269, § 3; 1 Preston on Estates, 298, 273; Hargraves Law Tracts, 573, 574, 503; Butler's Fearne, 86, 77; 1 Bro. C. C., 216; *Brown* v. *Lyon*, 2 Seld., 420, 421; Hayes on Estates Tail, 7 Law Lib. Prop., 3, 8; *Mandeville's Case*, Co. Litt., 26; 2 Jarman on Wills [3d ed.], 56, 57; 1 Powell

on Devises, 264, 300, 301; *Doe* v. *Carleton*, 1 Wilson, 225; *Harris* v. *Barnes*, 4 Burr., 215–17; *Moore* v. *Littel*, 41 N. Y., 71; *Doe* v. *Elvey*, 4 East, 318; *Burnsall* v. *Davey*, 1 B. & P., 215; *White* v. *Collins*, 1 Comyns, 289; *Doe* v. *Burnsall*, 6 E. R., 30; *Davis* v. *Taul*, 6 Dana, 51; *Shapland* v. *Smith*, 1 Bro. C. C., 75; Sugd. on Vendors [2d Am. ed.], 262–264; *Jones* v. *Ld. Say & Sele*, 8 Viner, 263; *Kinch* v. *Ward*, 2 Sim. & Stu., 409; *Sylvester* v. *Wilson*, 2 T. R., 444; *Tippin* v. *Cosin*, Carthew, 272; *Doe* v. *Ironmonger*, 3 East, 538; *Ward* v. *Amory*, 1 Curtis C. C., 428, 429.) By the word "heirs" in the first clause of the will, the testator meant issue, *i. e.*, "children." (*Striker* v. *Mott*, 28 N. Y., 93; *Taggart* v. *Murray*, 53 id., 233, 238, 239; *Doe* v. *Burnsall*, 6 T. R., 30; 6 Greenl. Cruise, *237–239, §§ 20–26; 2 Washb. on R. P., 364, § 3 [ed. 1862]; 1 Butler's Fearne, 466 [Lond. ed., 1844]; *Bundy* v. *Bundy*, 38 N. Y., 410; *Norris* v. *Beyea*, 13 id., 273; *Webb* v. *Hearing*, Cro. Jac., 415; *Nottingham* v. *Jennings*, 1 P. Wms., 23; *Parker* v. *Thacker*, 3 Lev., 70; *Ellis* v. *Mer. Bridge*, 2 Pick., 243; *Pinckney* v. *Pinckney*, 1 Bradf., 269, 276; *Haley* v. *Boston*, 108 Mass., 576; Lewis on Perpetuities [ed. 1848], 311–317; *Harris* v. *Davis*, 1 Coll. Ch. C., 423; *Goodright* v. *Goodridge*, Wills, 373; *Doe* v. *Black*, 6 Taunt., 488; *Exrs. of Rowe* v. *White*, 16 N. Y. Eq. [1 C. E. Green], 411; *Patterson* v. *Ellis*, 11 W. R., 275–294; *Anderson* v. *Jackson*, 16 J. R., 405–415; *Moffat* v. *Strong*, 10 id., 16–18; *Ellis* v. *M. Bridge*, 2 Pick., 243; *Burns* v. *Porter*, 4 id., 198.) The estate of Jordan Mott was a remainder in fee which vested in interest at the testator's death, liable to let in after-born issue of Mrs. Mott until the termination of the precedent estate, and which could only be divested by the death of Jordan Mott in the lifetime of his mother. (*Doe* v. *Newell*, 1 M. & S., 327; *Randall* v. *Doe*, 5 Dow., 202; *Doe* v. *Considine*, 6 Wal., 458, 474; *Roddy* v. *Fitzgerald*, 6 H. L. Cas., 883; *Doe* v. *Lawton*, 4 Bing. [N. C.], 455; *Doe* v. *Wright*, 7 East, 259; *Randall* v. *Tucker*, 6 Taunt., 418; *Roe* v. *Bacon*, 4 M. & S., 366; *Doe* v. *Lear*, 1 A. & E. [N. S.], 239; *Wells* v. *Ritter*, 3 Whart., 208; *Harri-*

*son* v. *Foreman*, 5 Ves., 207; *Ferson* v. *Dodge*, 23 Pick., 287, 292; *Finlay* v. *King's Lessee*, 3 Pet., 346; *Egerton* v. *Earl B.*, 4 H. L. Cas., 1; *Clavering* v. *Ellison*, 7 id., 707; *Doe* v. *Ward*, 9 A. & E., 582; *Carver* v. *Jackson*, 4 Pet., 1, 90; *Blanchard* v. *Blanchard*, 1 Al., 223; *Phipps* v. *Ackers*, 9 C. & F., 583; *Jeffers* v. *Lampson*, 10 Ohio St., 101; *Smith's Appeal*, 23 Penn. St., 9; *Pierce* v. *Hakes*, id., 231; *McLachlan* v. *Taitt*, 30 L. J. Ch., 276; *In re Orlebar* [L. R.], 20 Eq., 711; *Hervey* v. *McLaughlin*, 1 Price, 264; *Manice* v. *Manice*, 43 N. Y., 303, 380; *Roome* v. *Phillips*, 24 id., 363; *Boraston's Case*, 3 Rep., 20; *Phipps* v. *Acker*, 9 C. & F., 583; *Whitter* v. *Bremridge* [L. R.], 2 Eq., 736; *Doe* v. *Moore*, 14 East, 601; *Cropley* v. *Cooper*, 19 Wal., 168; *Arnold* v. *Buffum*, 2 Mason, 208; *Kelso* v. *Cuming*, 1 Redf., 392; *Bromfield* v. *Crowder*, 1 B. & P. N. R., 313; 14 East, 604; *Andrew* v. *Andrew* [L. R.], 1 Ch. D., 410; *Muskett* v. *Eaton*, id., 437; *Furness* v. *Fox*, 1 Cush., 134; *Taggart* v. *Murray*, 53 N. Y., 233, 238; *Doe* v. *Considine*, 6 Wal., 458, 472–479; *Cochran* v. *Van Surley*, 2 Wend., 365; *Williamson* v. *Field*, 2 Sandf. Ch., 549–562; *Williamson* v. *Barry*, 8 How., 508, 532; *Clarke* v. *Davenport*, 1 Bosw., 95, 113; *Kane* v. *Astor*, 5 Sandf., 469; 9 N. Y., 113; *Nodine* v. *Greenfield*, 7 Paige, 544; *Lawrence* v. *Bayard*, id., 70; *Depeyster* v. *Clendinning*, 8 id., 295; *Moore* v. *Lyons*, 25 Wend., 119; 5 Paige, 465; *Hawley* v. *James*, 16 Wend., 137; *Croxall* v. *Shererd*, 5 Wal., 288; *Leavitt* v. *Logan*, 3 Wal. Jr., 184; *Moore* v. *Littell*, 41 N. Y., 72–75; *Riley* v. *Garrett*, 3 De G. & Sm., 629; *Brown* v. *Brown*, 3 Sm. & Giff., 568; *Kersh* v. *Yongue*, 7 Rich. Eq., 100; *Gilman* v. *Redington*, 24 N. Y., 9; *Everett* v. *Everett*, 29 id., 39; *Festing* v. *Allen*, 12 M. & W., 279; *Rhodes* v. *Whitehead*, 3 Dr. & Sm., 533.) Whether Jordan Mott's interest was contingent or vested, it was alienable. (*Moore* v. *Littel*, 41 N. Y., 66; 53 id., 233; *Higden* v. *Williamson*, 3 P. Wms., 132; 2 Washb. R. P., 237, 238; *Miller* v. *Emans*, 19 N. Y., 398; *Jones* v. *Roe*, 3 T. R., 88; 1 H. Black., 30; *Moor* v. *Hawkins*, 3 Edm. Ch. Cas., 341; 1 H. Black., 34; *Pinckney* v. *Pinckney*, 1 Bradf., 273, 274; *Pond*

v. *Bergh*, 10 Paige, 156 ; *Mead* v. *Mitchell*, 17 N. Y., 210 ; *House* v. *Jackson*, 50 id., 165 ; *Jackson* v. *Sheridan*, id., 660 ; *Jackson* v. *Littel*, 56 id., 111 ; *House* v. *McCormick*, 57 id., 316 ; *Lawrence* v. *Bayard*, 7 Paige, 76.)   Being alienable, it passed to the assignee in bankruptcy, and from him to plaintiff.   (Owen on Bankruptcy [ed. 1842], 57, 58 ; *Higden* v. *Williamson*, 3 P. Wms., 132 ; *Stover* v. *Eyclesheiner*, 4 Abb. Ct. App., 310 ; id., 218 ; 50 N. Y., 660 ; *Carr* v. *Hilton*, 1 Curt. C. C., 230 ; *Carr* v. *Gale*, 3 Wood [B. & M.], 38.)   The two years' limitation in the eighth section of the bankrupt act was not a bar to this action.   (5 Stat. at Large, 446 ; *Stevens* v. *Hauser*, 39 N. Y., 302–312 ; *In re Conant*, 5 Blatch., 54 ; *Sedgwick* v. *Casey*, 4 Ben., 562 ; 4 Nat. Bk. Reg., 496 ; *Smith* v. *Crawford*, 6 id., 38 ; *In re Krogman*, 5 id., 116.)   The action was properly brought.   (*Stevens* v. *Hauser*, 39 N. Y., 302 ; 4 Kent, 446, note *e ;* *Hoyt* v. *Thompson*, 5 N. Y., 320, 347 ; *Truax* v. *Thorn*, 2 Barb., 156 ; *Tuttle* v. *Jackson*, 6 Wend., 224 ; Code, § 111 ; *Hamilton* v. *Wright*, 37 N. Y., 502 ; *Lowber* v. *Kelly*, 9 Bosw., 494, 502 ; *Towle* v. *Smith*, 2 Robt., 489, 495 ; *Hasbrouck* v. *Bunce*, 3 T. & C., 311.)

RAPALLO, J.   On the argument of this appeal various objections were urged against the validity of the proceedings for the sale, by the general assignee in bankruptcy, of the real estate in controversy.   The difficulty which we encounter *in limine* in considering these objections is, that the case is not made up in such a manner as to present the points for review in this court.   The cause of this difficulty was explained on the argument, it being then stated that the party mainly in interest, and in whose behalf the present appeal is being prosecuted, had no notice of the action until after judgment had been entered on the report of the referee ; but the difficulty still remains.

Section 9 of the Bankrupt Law of 1841, under which the proceedings in this case were had, provides that " all sales, transfers and other conveyances of the assignee, of the bankrupt's property and rights of property, shall be made at such

times and in such manner as shall be ordered and appointed by the court in bankruptcy."

Objection is now made that the order for the sale of the property in question was not an order of the court, but of the district judge, and, in support of this objection, the order, as printed in the case, is referred to. It is headed: "U. S. District Court Southern District of New York. In the matter of Jordan Mott, a bankrupt," and is signed by the district judge. It appears to have been read in evidence upon the trial, without objection, and it does not appear that the point now taken was raised in any form at the trial. The referee found, as a fact, that the order was made by the District Court, and there is no exception to that finding. For these reasons we think that the question is not properly before us.

The form of the order is also claimed to be defective, in that it directs the sale of the right, title and interest, etc., of the bankrupt, whereas it is contended that it should have directed the sale of the right, title, interest, etc., which the general assignee acquired by the decree of bankruptcy.

We think this objection untenable. The bankrupt act, it is true, declares that, by the decree in bankruptcy, all the property and rights of property of the bankrupt shall be divested out of him and vested in the assignee. But this is only for the purposes of the act, one of which is a sale for the benefit of the creditors, and the act, section 9, in speaking of such sales by the assignee, denominates them sales of the bankrupt's property and rights of property.

The more serious objection is that which is made to the sufficiency of the publication of notice of the sale. We are referred to the rule of the United States District Court, which provides that fourteen days' notice of sale of real estate shall be published where notice to show cause on the petition for the decree of bankruptcy was published (Rule 62); also to Rule 7, which provides that such notice to show cause on the petition shall be published in one or more public newspapers printed in the district, to be designated by the

court, and also to Rule 70, adopted at the same time, which provides that all notices of proceedings in bankruptcy, required to be published in newspapers, shall be inserted in, at least, three of certain papers named in the rule.

These rules were not put in evidence on the trial, but it is contended that this court can take judicial notice of them, and, further, that if it were necessary to prove them, they being matters of record, the proof can be supplied on the hearing of the appeal, and for that purpose an exemplified copy of the rules was produced on the argument.

We do not propose to enter upon the discussion of those propositions, nor of the question whether Rule 70, if properly before us, is applicable to notices to show cause on the petition, and consequently to notices of sales, nor have we been referred to any decisions showing what construction the courts of the United States have given to these rules with reference to that point. The preliminary difficulty in the way of our passing upon the sufficiency of the notice of sale is that no objection, relating to the notice of sale, appears to have been taken at the trial or passed upon by the court below. There is no finding or request to find, upon the subject, nor does it appear what notice was, in fact, given. It has been very frequently held in this court, that mere insufficiency of findings to establish the facts necessary to sustain the judgment, is no ground of reversal. The findings must affirmatively show error, and to present the question now endeavored to be raised, there should have been a finding or request to find that notice was not published in the manner in which the appellants claim that it should have been published, or, if the appellant desired to rely upon the want of proof of such publication, the objection of such want of proof should have been taken at the trial, when the defect might have been supplied. All that appears upon the subject is, that the order of sale which was put in evidence designates only one paper, but this does not show conclusively that even if Rule 70 applies, publication was not also made under that rule. It does not appear that the court below

made any decision on the question of publication which we can review.

From the pleadings and findings in this case it appears that, in the year 1843, when Jordan Mott was adjudged a bankrupt, his interest, if any he had, which passed to the general assignee, was an estate in remainder under the will of John Hopper in an undivided share of the Hopper farm, in the city of New York, of which the lots now in controversy are a part, the precedent estate being vested in trustees for the benefit of his mother during her life. That before 1851, but at what time does not appear, avenues and streets of the city had been laid out through this farm, and that in 1865 after the termination of the precedent estate by the death of his mother, a decree in partition was made between the several parties owning the farm, whereby certain city lots, part of said farm, were allotted and set off to Jordan Mott by metes and bounds, as his share, in severalty. To this partition the general assignee in bankruptcy was not a party. The sale by him of Jordan Mott's interest was made in 1868, after this partition, and such sale, and the conveyance executed to the purchaser in pursuance thereof, were of all the right, title, interest, property, claim and demand whatsoever, in law or in equity, of said Jordan Mott, in and to all the real estate described in the will of John Hopper, which had vested in the assignee by virtue of the proceedings in bankrupcty, and describing the entire farm.

The appellants now claim that the property should have been sold in parcels, and that the general assignee should have sold Mott's interest in the lots allotted to him in severalty on the partition, instead of selling his interest in the entire farm, and that this error renders the sale and conveyance void.

We are referred in support of this point to the act of congress of May 19, 1828 (chap. 68, Statute at Large, 278), which provided that writs of execution and other final process issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings there-

upon, should be the same, except their style, in each State respectively, as were then used in the courts of such State, and to the provision of section 47, article 2, title 5, chapter 6, of part 3 of the Revised Statutes, which provides, " that when real estate offered for sale by virtue of an execution, shall consist of several known lots, tracts or parcels, such lots, tracts or parcels shall be separately exposed for sale."

There are several answers to the point taken by the appellants. In the first place, this was not a sale on execution. But assuming that it is to be assimilated to a sale under a decree in equity, silent as to the manner of sale, I am not aware that it has ever been held, that such a sale could be attacked collaterally and held absolutely void, because not made in parcels. Furthermore, the general assignee was not bound by the partition, to which he was not a party, and he was entitled if he did not elect to affirm the partition, to sell the undivided interest of the bankrupt, which had been vested in him before the partition, if at all.

The point that at the time of the sale there was an adverse possession by the defendant Scholtz, and the deed of the assignee was therefore void, as to the lots held by him, is not tenable. The statute does not apply to judicial sales. (*Stevens* v. *Hauser,* 39 N. Y., 302; *Hoyt* v. *Thompson,* 5 N. Y., 320.)

This brings us to the question whether, at the time of the decree in bankruptcy, Jordan Mott had an interest in the property devised by the will of John Hopper, which could pass to the general assignee in bankruptcy. We have examined this question with care, and have come to the conclusion that the adjudications already made in this court upon this very title sustain the views of the respondent.

Those decisions are uniform in holding, that during the life of Mrs. Winifred Mott, the legal estate was in the executors, as trustees, and their successors, and so with the shares of each of the other two grandchildren of the testator, Garret H. and Ann Striker. They are not uniform as to the remainder on the cessation of the trust. In the first case in which the question arose (*Striker* v. *Mott,* 2 Paige, 387), the

chancellor took the same view on this point as that now
urged by the counsel for the appellants, viz. : that, subject to
the estate given to the trustees, the grandchildren each took
a remainder in fee, in one-third, conditioned upon their respec-
tively leaving issue them surviving. And he held that the
then present estate being vested in the trustees, the grand-
children could not maintain a suit for partition and it was
not certain that the property would ever belong to them.
*Brewster* v. *Striker* (2 Comst., 19), was an action of eject-
ment, brought by the purchaser at a sheriff's sale, under an
execution against G. H. Striker. JONES, J., who delivered
the opinion of the court, held, that G. H. Striker had no
vested estate in remainder or future estate which could be
sold under execution. The court, without passing upon the
limitations over, affirmed the judgment on the ground that
the executors took by implication of law the present legal
estate, and that the grandchildren took no *immediate* legal
estate which could pass by sale under the judgment and
execution.

These cases did not necessarily involve a determination of
the point, whether the remainder, after the expiration of the
trust estate, was by the will limited to the grandchildren, or
to the issue of such grandchildren respectively, in case they
should leave issue them surviving. But in the subsequent
case of *Striker* v. *Mott* (28 N. Y., 82), this court passed upon
that question.

Ann Striker died in the year 1860, without issue, and it
was claimed that the one-third which had been held in trust
for her during her life, thereupon became vested, under the
will of John Hopper, in her surviving brother and sister, Gar-
ret H. Striker and Winifred Mott, and this action was brought
to obtain partition. Ann Striker had left a will, by which
she devised all her real estate to one Swords and others, who
claimed under this will and brought an action to establish
their rights, which was heard in connection with the parti-
tion suit. It apeared that in the year 1821, Garret H. Stri-
ker, Winifred Mott and Ann Striker, then supposing that

under the will they each took one-third of the land in fee,
had obtained a partition between themselves in the Mayor's
Court, which partition they had confirmed by deeds, and that
Garret H. Striker and Winifred Mott had conveyed to Ann
Striker the one-third of the land which had been allotted to
her, and which she then possessed and enjoyed in severalty.
Swords claimed that this deed conveyed to Ann Striker the
remainder in her own share, which was limited by the Hopper
will to the surviving grandchildren, in case of her death with-
out issue, and that this remainder passed by her will to him,
Swords.

The court held that the deed from Garret H. Striker and
Winifred Mott to Ann Striker, though executed for the pur-
pose of confirming the partition, did not depend upon the
validity of that partition but was effectual as a deed of bar-
gain and sale to pass any interest in the lands therein
described which the grantors could convey, notwithstanding
that the partition was ineffectual. But they held that G. H.
Striker and Mrs. Mott had no vested estate in the premises,
and no estate which they could convey by deed, and, hence,
nothing passed by this deed to Ann Striker, and, consequently,
Swords took nothing under her will. This decision was
placed upon the ground that by the will of John Hopper suc-
cessive estates in each third part of the land were limited
as follows : First, to the trustees for the life of the grandchild
for whose benefit that third was devised; remainder to the
issue of that grandchild if he or she should leave issue, in fee,
but if he or she should die without issue living at his or her
death then remainder to the grandchildren and the survivor
of them. That this second remainder was contingent, though
it would have been vested if the first remainder had been for
any estate less than a fee simple. The court, thereupon, held
that the remainder to the survivors of the three grandchildren
being contingent was not alienable, and did not pass by the
partition deeds of 1821, but on the death of Miss Striker in
1860, without issue, it took effect and her share vested in her
surviving brother and sister, notwithstanding the conveyances

made by them in 1821; that these deeds not containing covenants of warranty did not operate as estoppels.

The position now taken by the appellants' counsel is that no remainder was created by the will of John Hopper in favor of the issue of his three grandchildren. That by that will the land was, in the first instance, devised to the grandchildren in fee, and the effect of the subsequent provisions was first, to carve out of that fee an estate in trust in the share of each grandchild during his or her life, leaving the remainder in fee vested in such grandchild, and, secondly, to reduce the absolute fee first given, to a base or conditional fee, by making it determinable by the death of the grandchild without leaving issue him or her surviving, in which event the share of the grandchild so dying was to go to the survivors.

If this be the true construction of the will it necessarily follows that each of the grandchildren had a vested, though defeasible, remainder in fee in one-third, and had the power of alienating such third by any conveyance, to take effect in possession after his or her death, or of disposing of such share by will, subject only to the contingency of his or her leaving no surviving issue, and that such a conveyance would cut off all claim of the issue should there be any. Such issue, therefore, had no estate or interest in the land during the lifetime of the parent, and could take only by inheritance from the parent in case such parent made no disposition of the remainder. Consequently Jordan Mott, at the time of his being decreed a bankrupt, which was during the lifetime of his mother, had no estate in the land which could pass to the assignee in bankruptcy.

It is claimed that the decisions before referred to are not decisive of this point, and that neither of them necessarily involved the question whether the first remainder after the termination of the trust, was vested in the grandchildren themselves, or in their issue.

The case of *Brewster* v. *Striker* (2 Comst., 19) certainly does not decide the question, for, as appears from the report, the court expressly declined to pass upon the limitations over

after the trust estate, but placed their decision upon the ground that no *immediate* estate passed by the sale, and this was a sufficient answer to the action of ejectment. But in the case of *Striker* v. *Mott* (28 N. Y., 82) the court does undertake to construe the will. The character of the remainder which preceded that limited to the surviving grandchildren, was a necessary ingredient in the determination of the case. The rights of the issue of grandchildren were not, it is true, directly involved in that action, all the grandchildren being then living, but the court passed upon those rights and based its decision upon them. It placed its decision that the grandchildren could not, in 1821, alienate or release the remainders in each other's shares, limited to them by the Hopper will, expressly upon the ground that, by the same will, a prior remainder in fee was limited to the issue of each grandchild, should he or she leave any him or her surviving, and therefore, the second remainders limited to the survivors of the grandchildren, in the event of either dying without such issue, were contingent, and consequently, as the law stood before the Revised Statutes, when the conveyances were made, such remainders were inalienable. It may be said that the same result would have followed if the court had held, as now contended, that the first remainder was in the grandchildren themselves, instead of their issue, for that would have been a remainder in fee, defeasible only by their dying without issue living, and the further remainder limited in that event to the survivors, would equally have been contingent and inalienable. But we do not think that the case can, by this reasoning, be deprived of its force as an authority. The question as to what estates preceded the limitation to the surviving grandchildren was in the case, and had to be inquired into and determined for the purpose of ascertaining the character of that limitation. The court determined that one of the precedent estates was a remainder to the issue of each grandchild. This was directly within the proper line of inquiry and a necessary ingredient of the decision. It cannot be rejected as immaterial by showing that the same result might have

been reached by holding that the remainder thus held to be in the issue, was in somebody else.

It must further be observed that if the first remainder had been held to be in the grandchildren themselves, it would have been difficult to hold that they had no vested estate in the land, and that nothing passed to Miss Striker by the deeds from her brother and sister. They had issue, and their deeds, if the partition was ineffectual, would, it seems, have passed the title to undivided thirds of the lots therein described, to take effect in possession as to each third, on the determination of the trust estate of the executors. That interest would clearly have been vested and alienable, the precedent estate being only for life, and the remainder being in fee, defeasible only by the condition subsequent, of the grandchildren dying without leaving issue living.

It appears, from the uncontroverted allegations of the complaint, that since the death of Miss Striker and Mrs. Mott, a partition of the Hopper farm has been judicially had in conformity with the construction given to the Hopper will in 28 New York, and it would be contrary to all precedent to change a decision of the court of last resort which has become, so far at least as this estate is concerned, a rule of property.

The case of *The Union National Bank* v. *Kupper* (63 N. Y., 617) recognized the construction of the Hopper will given in 28 New York, but did not involve the questions now at issue, the property affected by that case being part of the share of Miss Ann Striker, in which the children of Mrs. Mott clearly had no interest during her lifetime.

We have not discussed the question on principle, because we regard it as decided by the previous adjudication of this court. We have, nevertheless, examined it, and concur in the conclusions reached by Denio, J., in 28 N. Y., 82. The foundation of the argument on the part of the appellants is that the first sentence of the devise in question, whereby the testator gives the land to his three grandchildren and their heirs, vests in them a fee, and is to stand as a devise in fee, notwithstanding the subsequent provisions of the will, and

that the only effect of these is to carve out of that fee a trust estate, leaving the remainder in fee in the grandchildren, and to annex to that fee a condition that such fee shall determine in case of the death of the grandchildren, respectively, without leaving lawful issue. But we think that this mode of construction is not in accord with settled rules. All the parts of the will must be taken together, and each one construed in the light of the others. Although a devise to a person and his heirs gives him an estate in fee simple, yet if the word " heirs " be qualified by any subsequent words which show the intention of the testator to restrict it to the heirs of the body of the devisee, the word "heirs," as first used, must be read as issue, and would, before the abolishment of entails, have created an estate tail. (6 Greenl. Cruise, 232, § 7.) So, where a testator devised all his land to his son John and his heirs, and, if he died without issue, to his nephew, in fee, it was held that the first limitation was the same as if it had been to John and the heirs of his body, and no fee (id., § 9), and where, as in the present case, lands are devised to a person and his heirs, with a remainder to one who would be a collateral heir of the first devisee, the word " heirs " will be construed to mean heirs of the body, or issue. (6 Greenl. Cruise, 237–239 ; *Bundy* v. *Bundy,* 38 N. Y., 410 ; *Taggart* v. *Murray,* 53 N. Y., 233.) Consequently, in the cases before cited, in which the will of John Hopper has come under discussion, it has been claimed, on the part of the grandchildren, that they took a fee, not by virtue of the devise to them and their heirs, but on the ground that, conceding that the devise was to be read as a devise to them and their issue, they took an estate tail which was converted by the statute of this State into a fee.

We think it quite clear that the will must be read as if the first devise were to the three grandchildren and their issue, respectively. If this were all of the will, no doubt they would have taken an estate tail, and, consequently, a fee, but this devise is immediately followed by the words " said real estate so devised to be disposed of as follows by my executors,"

etc.   Then follows a provision prohibiting its alienation, and other provisions which have been adjudged by this court to vest in the executors the legal estate in one-third during the life of each grandchild, in trust.   We think this shows an intent that the grandchildren should have no power of disposition, and no estate in the land during their lives, but simply the equitable interest to which they were entitled under the trust, and that upon their death the property should go to their issue.   The remainder in default of issue, it is conceded on all hands, is limited to take effect in case of their dying without issue living at the time of their death, and not on an indefinite failure of issue.   It hardly seems consistent with the scheme of the testator that an estate should remain vested in the grandchildren which would enable them to cut off the interests of the issue by a conveyance or testamentary disposition, when he had expressly provided that it should not be alienated.   It is more in accord with the apparent intent of the will to hold that the devise to his grandchildren and their issue, as explained by the succeeding provision, was in trust for the benefit of the grandchildren during their lives, respectively, with remainder to their issue living at their death, and, in default of such issue, to the grandchildren surviving.

We think that the provisions, subsequent to the devise to the grandchildren, cannot be construed simply as carving out of the estate apparently given to them, an estate in trust, leaving the remainder in them, but must be regarded as explaining the interest intended to be given, and modifying the effect which the language first used would have had if not thus qualified.   If the language of the will had been that the testator gave the real estate to his grandchildren during their lives, respectively, and after their death to their issue, but directed that, during their lives, the legal estate should be vested in trustees for their benefit, and should not be alienable, there could not be any question as to the remainder being in the issue, and yet this is precisely the disposition which we think the testator intended to make.

The rule in Shelley's case could not apply, for the reasons stated in previous decisions. In wills it must yield to the clear intent of the testator, and it is never applicable when the estate of the first taker is equitable, and that of the remainder-men legal, and *vice versa*.

We have deemed it appropriate to make these observations to answer the argument forcibly presented on the part of the appellants, and which does not appear to have been presented in any of the cases in which this will has heretofore come under consideration, rather than for the purpose of endeavoring to fortify those decisions. The further question is raised whether the remainder to the issue of Mrs. Mott was an estate which could pass to the general assignee in bankruptcy during the life of Mrs. Mott. Laying out of view the provisions of the Revised Statutes which confer the quality of alienability on all expectant estates, we are of opinion that the remainder was not contingent, but vested. Mrs. Mott had sons living at the time of the death of the testator John Hopper. They then answered to the description of her issue, and were the persons who, on the termination of the precedent estate, would have been immediately entitled to possession. That precedent estate was not a fee, but merely an estate for the life of Mrs. Mott. Where there is a future devise to children or issue, with a substituted devise in case they die during the precedent estate, the remainder is held to vest as soon as a child is born, subject to let in afterborn issue, and to be divested as to any of such issue who may die during the continuance of the precedent estate. This proposition is abundantly sustained by the authorities cited. Reading the will as we construe it, the remainders were to the issue of the grandchildren, and were vested and alienable when there was such issue living, and the estate of Jordan Mott was of such a character as would pass to the general assignee in bankruptcy independently of the provisions of the Revised Statutes. (See *Higden* v. *Williamson*, 3 P. Wms., 132.) The case is not analogous to that of *Moore* v. *Littel*. (41 N. Y.; see opinion of GROVER, J., p. 90–93).

The general assignee seems to have disregarded the partition of the property, to which he was not a party, and to have sold the undivided interest of Mott in the entire farm. The question whether the present plaintiffs have become entitled to recover possession of any particular parcel in severalty, has not been argued on this appeal, and we have not, therefore, examined it, but, upon the points presented, we feel constrained to affirm the judgment.

All concur; FOLGER, J., absent.

Judgment affirmed.