The lot of land in controversy between the parties to this action, is on the northerly side of Fulton street, in the city of New York. It was the property of the late Thomas Mackaness, at the date of his will and at the time of his death. The will was dated on the 15th of February, 1806, *Page 346 
and he died shortly afterwards. The fourth, and, in this case, the only material clause of the will (although it may be proper to refer to some of its other provisions) is in the following words:
"Fourth, I give and devise unto my said daughter, Margaret Thornton Mackaness, her heirs and assigns forever, my dwelling-house and lot of ground distinguished by number thirty-two, adjoining Partition street in the city of New York, with the appurtenances; but if my said daughter, Margaret Thornton Mackaness, shall die unmarried and without leaving a child her surviving, then I give, devise and bequeath the said last-mentioned dwelling-house and lot of ground, with the appurtenances, and also all such other parts of my real and personal estate as by this my will are given, devised and bequeathed to her, to my daughters Elizabeth Harvey and Mary Prowitt, their heirs and assigns forever, in equal parts to be divided. But if my said daughter Margaret Thornton Mackaness shall die, either before or after my decease, leaving lawful issue, then I do give, devise and bequeath the part and parts, share and shares of my real and personal estate, by this my will given, devised and bequeathed to her, unto such child or children, if one only to him or her solely, and his or her heirs and assigns forever, if more than one, to them, their heirs and assigns forever, equally to be divided between them, share and share alike, and in case my said daughter, Margaret Thornton Mackaness, shall die without lawful issue, and if at her death either of my said daughters Elizabeth Harvey and Mary Prowitt shall then be dead, and shall have a child or children then living, I give, devise and bequeath the part or parts, share or shares of my real and personal estate by this my will devised and bequeathed to their respective mothers so being dead, to such child or children, if one only, to him or her the whole, and to his or her heirs and assigns forever; and if more than one, to them their heirs and assigns forever, in equal parts to be divided."
The testator's daughters Elizabeth Harvey and Mary Prowitt each had a husband living at the time when the will was made. *Page 347 
To the former he devised another lot of ground and dwelling-house during the term of her natural life, and upon her death and that of her husband he devised the same to her child or children, if she should leave any; and to his daughter Mary Prowitt he devised the rents, issues and profits of another dwelling-house and lot (the title to which he vested in trustees) during her natural life, and upon her death he devised such house and lot to her child or children in fee, if she should leave any. The will is some sixty folios in length, and exhibits a strong disposition in the testator to control the destination of his property for a long period, and in minute and often unimportant particulars: and it seems that some ten months afterwards he deemed it proper to add a memorandum to his will to bestow some trifling additional legacies. Where so much is attempted, it rarely happens that there are not inconsistencies which give rise to disputes and litigation.
Upon the death of the testator, his daughter Margaret entered into possession of the dwelling-house and lot in Partition (now Fulton) street devised to her. She afterwards intermarried with Charles Ludlow, by whom she had three children. She survived her husband and two of their children, who died in early infancy: she died on the 27th of June, 1853. Her only child who survived her was her daughter, Elizabeth Ludlow, who subsequently married Thomas W. Chrystie, and they are the plaintiffs in this action. On the 17th of May, 1815, the said Charles Ludlow and his wife Margaret (then late Margaret Thornton Mackaness) executed and delivered to the late Duncan Phyfe a conveyance in fee of the said dwelling-house and lot in Fulton street, for the consideration of $9,250. He thereupon entered into the possession of such premises and continued to occupy them until this action was instituted, which was originally against him, and upon his death was continued against the defendants, who, with the exception of William Vail, are his heirs-at-law. The plaintiffs contend that Duncan Phyfe acquired by the conveyance to him only an estate for the life of Mrs. Ludlow, while the defendants insist that he obtained the fee simple absolute. *Page 348 
The question is simply one of title under the will and deed, as clearly none has been acquired by adverse possession.
In the construction and application of wills, and especially of those containing complicated provisions, the following are reasonable and well-settled rules:
The intentions of the testator shall prevail if they are consistent with each other and conformable to the principles of law:
The language used shall receive its ordinary interpretation, except where some other is necessarily or clearly indicated:
Where words are equivocal that explanation shall be given which will preserve consistency, in preference to one which would create inconsistency:
If possible, some effect shall be given to each distinct provision rather than that it should be annihilated:
Where at first a special, and subsequently a general term is used, plainly having reference to the same matter, the latter should be limited to the former, and
Where, after the application of liberal principles of interpretation, there is yet a palpable contradiction between two directions as to the same matter, the latter should prevail.
Some of these rules are applicable to the case under consideration; and under them I should not think that there could be much difficulty or doubt, but for the reasoning of the learned judge who gave the prevailing opinion in the Supreme Court.
In the first and second clauses of the will the testator devises portions of his real estate to his two elder daughters, both of whom were then married and had children; to one of them directly, and to the other through trustees: both expressly during life. In the devise to his third daughter, in the first sentence of the fourth clause, he gives the dwelling-house and lot of ground in Fulton street, to her, "her heirs and assigns forever." The change of phraseology is material, and clearly indicates a different intent from what had been expressed before. The testator evidently designed to give some preference to his third daughter; probably as he might leave her in a comparatively unprotected state, and possibly from a *Page 349 
higher regard for his youngest child, who was still an inmate of his family, than for her elder sisters who had married and had other homes. Aged men are often influenced by such, and sometimes by more unaccountable, considerations It would not contradict the intent disclosed in the primary devise, to qualify the fee so as to make it determinable upon some more probable contingency; but it would of course be repugnant to make such subsequent provisions as to prevent the fee from vesting in any case. An interpretation to the various provisions of the fourth clause, which would give to the testator's daughter, Margaret, a determinable fee, would be much more consonant with the testator's expressed intention, than one which would confer upon her only a life estate. The testator, in dictating the clause, seems to have had in view three contingencies, one of which must almost necessarily happen: that his daughter, Margaret, might never marry; or that she might marry and have no children; or that she might marry and have lawful issue. In the event of her dying unmarried, there was a clear and direct devise over to her sisters in fee. It was probably inferred that if she should die unmarried it would be at an early age, and then there would be a strong motive to devise, and thus to secure the property, to the other daughters. But it seems to me that it was not designed that they should succeed to the estate in any event if their younger sister should marry. The devise over to them is only upon an expressed double contingency, her dying unmarried and childless. It was contended on the argument that this should be construed in the alternative, as otherwise the contingency of her dying without leaving a child her surviving, would be unmeaning; as she could not, of course, leave a lawful child (and such is undoubtedly the proper construction of the term) without being married. That would make the terms simply superfluous, and would involve no contradiction. Full meaning can be given to both contingencies by transposing them, as is often done where such provisions are connected by the conjunction "and," when that is necessary to make them sensible. (1 Jarm. on Wills, 437, *Page 350 
2 Paige, 122.) The devise over would then read, that if the daughter (Margaret) should die without leaving lawful issue, and unmarried, then the estate should go to her sisters. But, on the other hand, to construe the two conditions in the alternative, would not only render the first one nugatory, as she could not leave a lawful child without marrying, but would render it necessary to change the copulative conjunction, "and," into the disjunctive "or." Such a substitution is sometimes allowable, but is never permitted when the exchange would counteract a previously clearly expressed intention, or when it would operate as a divesture of an estate previously devised. It would undoubtedly create an additional restriction upon an estate in fee to make it determinable upon either of two contingencies instead of both, and in this instance it would be hostile to a strongly expressed intent. Neither would the fee previously devised to Margaret be determinable in the event of her marriage, unless she should leave a child surviving her; and whether that would terminate it I shall consider hereafter. The testator may have been influenced in giving the fee to the daughter in the events of her marrying and leaving no child, or if she should leave children, then an estate to her for life and the remainder in fee to such children, by his anxiety to procure for her an advantageous marriage: and certainly, to a man who might be influenced by interested motives in proposing that connection, it would seem far better that a considerable property devised to the lady should belong absolutely to her, or if she should have children, eventually to them; than that, in a contingency not very uncommon or improbable, it should go over to others. It is true that in the latter part of the same clause there is a devise over to the children of her sisters, if she should die without lawful issue, and the other daughters should then be dead; but that is qualified by limiting it to what he had previously given to the mothers, and could not so operate as to extend such estate. Although the expressions are general, yet they could not be so construed as to dispense with a condition necessary to the investiture of an eventual estate in the mothers. The children *Page 351 
could only take, where their mothers might have taken if they had survived their sister; neither is it rulable to apply the terms used in making a mere substitutional disposition of an estate, so as to alter what is before clearly expressed in reference to the same matter.
If I am right in my conclusion that the testator's daughter would have had the fee if she had married, determinable only upon her leaving lawful issue, then it is not necessary that any provision in the will should be distorted so as to carry a presumptive fee, in order to prove his consistency. We are at full liberty to construe his language according to the ordinary rules. The testator, in the next sentence after that giving an eventual estate to the two eldest daughters, in the building and lot in Fulton street, provides, that if his daughter Margaret should die, either before or after his decease, leaving lawful issue, then he gives, devises and bequeaths the part and parts, share and shares of his real and personal estate, by his will given, to her, unto such child or children: if one only, to him or her solely, and his or her heirs and assigns forever; if more than one, to them, their heirs and assigns forever, equally to be divided between them, share and share alike. This, in the event which has happened, is the most important provision. If it be clearly expressed, as I think it is, it must prevail, whether it qualifies or contradicts the previous gift. (1 Jarm. on Wills,
411; Co. Litt., 112, b; 2 Atk., 372; 5 Ves., 243; 6id., 100; 2 Taunt., 109.) The actual intent cannot be doubted. It was that, if his daughter should leave a child or children, he, she or they should take the remainder in fee. It was contended by the counsel for the defendants, that this clause was inserted merely to prevent a lapse which might otherwise have happened if the daughter had died in the lifetime of the testator. But if so, why use the words either before or after his decease? He could not have mistaken their meaning. They are clearly and strongly expressed. Terms of art may be, and frequently are, misunderstood by those who have not made them their study. But the words "either" and "before or after," are understood by any one at all *Page 352 
acquainted with the English language. Such words cannot be struck out without doing violence to the manifest intention of the testator. The word "before" may have been used to prevent the lapsing of the devise; but the words "either" and "after" indicate clearly an intent to make the provision general. We are not authorized to strike out or pervert the words in a will. Most assuredly not, where they, as universally understood, are in accordance with the evident plan and design of the testator. From some cause the testator, in any instance, seems to have preferred his grandchildren to his children. He was evidently determined that either of his daughters having children should not have it in her power to divert his property from them. In this particular I can discover no difference in reference to either of the daughters. It cannot be rationally inferred that the testator, in making the disposition in favor of Mrs. Ludlow's children, if she should leave any, simply intended to provide for the continuance of the absolute fee in her in that event. He, doubtless, knew that it would be unnecessary for that purpose, as the primary estate would be no further restricted than by such express provision as would impair it. Besides, he must have considered that if the absolute fee should continue in her after she had children, she could sell the entire property, and thus divert it from the children altogether. That he certainly did not design. It may seem singular that any man should prefer giving an absolute title to his property to grandchildren who can be in many cases but little, and in some are not at all, known to him, to vesting it in his children, who have been the first (in date, if not in degree) objects of his affection. Still it was evidently so with this testator, as it has been with many others. Some importance seems to have been attached by the Supreme Court to the word "assigns," used by the testator in the primary devise to his daughter Margaret, and it was considered as indicative of an intent that the absolute title should be vendible by her. No reliance was placed upon that by the counsel for the defendants on his argument in this court, and with reason, as the word is generally used where the fee is *Page 353 
determinable, as well as where it is intended to be absolute. It was used in Medcef Eden's will, and yet it was decided that the son to whose estate it was applied, who died without issue in the lifetime of his brother, took at first a determinable fee which eventuated in a mere life estate. (16 Johns., 382.) The instances of a similar application of the term are quite numerous.
It was insisted in behalf of the defendants, that even supposing that there were expressions in the will which of themselves would indicate an intent to give to the testator's daughter, Margaret, a life estate only, if she should leave children, yet the devise to her children would constitute the whole an estate tail in her, within the rule in Shelly's case. The rule established in that case, and which prevailed in this State until the Revised Statutes of 1830 commenced operation, was, that where an estate of freehold was limited to a person, and in the same instrument there was a limitation, either mediate or immediate, to his heirs, or the heirs of his body, the word "heirs" was to be taken as a word of limitation; or in other words, the ancestor took the whole estate comprised in those words: if it was to the heirs of his body, an estate tail; but if to his heirs generally, a fee simple. The word "heirs" was construed as a word of limitation, and not of purchase. The reason of the rule was, that if the heir should take as a purchaser, he would defraud the lord of the fruits of his tenure, to which he would have been entitled upon a succession as heir. Upon the subsequent abolition of feudal tenures, the reason for the rule no longer existed, but the rule itself remained. As it had become a rule of property, it would have been wrong to abolish it; but the reason for it having ceased, courts have not been inclined to extend it, as in most cases it was opposed to the actual intent of the testator. Hence it has not been applied to any case, except where the words used to designate the secondary devisees, were words of limitation, such as `heirs,' or `issue of the body;' and even in cases where those words were mentioned, the rule was inapplicable if the devise was only to a designated portion of them. In the case *Page 354 
under consideration, although the secondary devise is upon the event of the death of the daughter leaving lawful issue, yet it is to her "child or children," and to his, her, or their heirs and assigns.
The contingency is, her leaving issue; but the devise is to her child or children, and to him, her or them as the stock or stocks of their descent, and not as the stock of the mother. In such cases "child or children" are never deemed words of limitation. There is one class of cases, and one only, in which the term "children" is considered as a word of limitation; that is, where there is a present devise to one and his children, when he has no children at the time. There if the word "children" should be interpreted as words of purchase, future children could not take at all, and in order that the will of the testator may operate favorably to them and not confine the gift to the parent for life, "children" is then deemed a word of limitation. (Wild'sCase, 6 Rep., 17.) There are other cases, however, in which it has been held that a devise to one and her heirs, "say children," gave her a life estate only, with remainder to the children. (Crawford v. Trotter, 4 Madd., 361.) Jarman, in his addition to Powell on Devises (vol. 2, 502), says that where there is a devise to A. and his wife, and after their death to their children, it is now admitted, on all hands, that it gives an estate for life to the parents, with remainder to the children for life.
If so, words of inheritance superadded to the children would not enlarge the estate of their parents. In the matter ofSanders (4 Paige, 293), Chancellor WALWORTH decided that the term "children," in its natural sense, is a word of purchase, and it is to be taken to have been used as such, unless there are other expressions in the will which show that the testator intended to use it as a word of limitation only. In Rogers v.Rogers (3 Wend., 503), the Court for the Correction of Errors decided that, when there was a devise to A.B. during his natural life, and, after his decease, to the children of his body lawfully begotten, followed by a habendum clause, "to have and to hold unto A.B. for and during his *Page 355 
natural life, and after his death to the heirs of his body lawfully begotten, and their heirs and assigns forever," A.B. took only a life estate with a remainder in fee to his children. In Doe v. Perryn (3 D. E., 484), there was a devise to B., the wife of A., for life, remainder to the children of A. and B. and their heirs forever, and for default of such issue, over. It was held that the word "issue" was qualified by the word "children," and that the children of A. and B. took the remainder in fee. In many of these cases it is true that the first estate was given expressly for life, but in this case it was expressly limited to the same duration, if the first taker should die leaving children. I have quoted them mainly to show that "children" is not a word of limitation, and that, therefore, the rule in Shelly's case cannot apply. I am satisfied that Mrs. Ludlow did not acquire an estate tail, nor was the verbal reduction of her primary estate to one for life deprived of its intended effect, by any express limitation. Neither was an estate tail created by implication. It is undoubtedly the rule that, where land is devised to one primarily, without any words of limitation, or even expressly for life, and there is subsequently a devise over of the same lands, upon the general failure of the heirs of his body or of his issue, the latter evinces an intention that it should go to him and such heirs or issue, and he takes an estate tail by implication, and under the rule inShelly's case. But that is only upon a general failure of such heirs or issue, however remote that may be. But if such failure is restricted to the death of the first taker then it does not convert the nominal life estate into an estate tail, but gives a remainder to the heirs or issue at his death by implication, and, upon their failure at the time, carries a substituted estate to the next devisee, by way of executory devise. In this case the devise over is not upon an indefinite failure of the issue of Mrs. Ludlow. But it is to her child or children, and they must, of course, be born in her lifetime. In the instance of Eden's will, to which I have alluded, the devise over was in general terms upon the failure of issue, but it was held that was saved by its being made expressly to the survivor. *Page 356 
In this case the devises over are: first, if Mrs. Ludlow should not leave a child her surviving; second, if she should die, leaving lawful issue, then to such child or children; and the third, if she should die without lawful issue, and at her death either of the testator's other daughters should then be dead, and should have a child or children then living: all of them refer clearly to the time of her death, and the devises over are to take effect then, if ever. Besides, if these devises over merely qualify an estate in terms in fee simple, they do not have a tendency to convert that into an estate tail, which our statute abolishing estates tail would constitute a fee simple absolute. In the case of Anderson v. Jackson (16 John., 382), there had been a devise to each of the testator's two sons, his heirs and assigns forever, as and for his own proper lands and tenements, in as full, large, ample and beneficial manner to all intents and purposes as the testator could or ought to enjoy the same; and there was in a subsequent part of the will a provision that "if either of the said sons should depart this life without lawful issue his share or part should go to the survivor:" and it was decided by the Court for the Correction of Errors, that that these words did not create an estate tail, but that there was a valid executory devise to the survivor, in the event of the death of the shorter liver without issue. In that case the devise in the first instance was quite as emphatically of a fee simple absolute as in the case under consideration. In the case ofFosdick v. Cornell (1 John., 440), there was a devise to the testator's son William and his heirs forever, and there was a subsequent provision to the effect that if William should happen to die without heirs male of his own body, the land should return to his surviving brothers and sisters; and it was held that the primary estate in fee was not converted into an estate tail, but that the gift over was valid as an executory devise. In Jackson
v. Staats (11 John., 337), the testator had devised certain lands to his sons Samuel and Joachim, and their heirs, and he subsequently directed that if any one of his eleven children should happen to die without heirs, then his or their parts or shares should be divided *Page 357 
among the rest of the children. The court held that the limitation over was valid as an executory devise. Judge SPENCER said "that the point whether the limitation over operates as an executory devise or to create an estate tail admits of very little difficulty. I believe none of us have ever doubted the correctness of the decision in Fosdick v. Cornell, and it would be a waste of time to review the authorities there cited."
Upon the whole, I am satisfied that the primary devise to the testator's daughter Margaret was reduced by the restrictions subsequently imposed upon it, and the events which subsequently happened, either to a determinable fee or a life estate, and that in either case the devise over to her child upon her death carried upon that event an estate in fee to her daughter Mrs. Chrystie.
The judgment at the general term must be reversed, and that rendered at the special term must be affirmed.
JOHNSON, Ch. J., and SELDEN, ALLEN, GRAY and GROVER, Js., concurred in this result.