ELLEN PICKERT, as Administratrix, etc., of SOLON S. PICKERT, Deceased, Appellant, v. FREDERICK WINDECKER, JOHN W. WINDECKER and JOSEPH T. WOOSTER, Impleaded with Others, Respondents.

*A contingent remainder is alienable — amendment of summons and complaint by changing the title of the suit — decision of a referee solely upon evidence taken before the amendment, sustained — two bills of costs.*

A contingent remainder being a contingent future estate in expectancy, is alienable in the same manner as estates in possession.

A will devised certain land owned by the testator in fee to the testator's son Emilius for his natural life, with this provision : "In case my said son Emilius should have a child or children living at his death, then, in that case, I give and bequeath the aforesaid sixty-eight acres of land bequeathed to him during his life, to such child or children, if living' at his death, and to their heirs and assigns forever, to have the remainder after his death and not before,"

followed by a provision that in case Emilius died leaving no children, the property should go to the testator's other children.

Emilius survived the testator and entered into possession of the land under the will, having several children, one of whom, Solon, executed an instrument, whereby, for a good consideration, he did "sell, set over, transfer and assign all his right, title and interest in and to said sixty-eight acres of land, and all his share, right, title and interest to the said real estate or any part thereof, of whatever name or nature," to the grantee, his heirs and assigns forever. Thereafter Emilius died, leaving his son Solon and other children surviving.

Solon thereupon brought an action for the partition of the land.

*Held,* that, under the will, Emilius took only a life estate in the land; that the remainder vested in his children, and was alienable; and that the interest of each of his children would pass by conveyance thereof;

That the instrument executed by his son Solon operated as a conveyance of his contingent interest in the land to the grantee, and entitled the latter to hold such interest absolutely upon the death of Emilius; and that consequently Solon had no title to or interest in the premises at the time of the commencement of the action for partition, and hence could not maintain it.

Solon was a lunatic when the action for partition was brought, and the action was brought in the name of his committee as plaintiff; it was referred, and after the taking of evidence and before the final submission of the cause to the referee, the plaintiff's attorney obtained an order amending the summons and complaint so that the action was entitled in the name of the lunatic by his committee. After this order was made the defendants' attorneys served notice of trial before the referee upon the plaintiff's attorney; thereafter the plaintiff's attorney appeared before the referee and applied for an adjournment. The referee denied the application, but the defendants' counsel consented to allow the plaintiff to put in further evidence, which was not done. Both parties submitted written arguments and points to the referee, who took the case under advisement upon the evidence given prior to the order of amendment, and rendered a decision dismissing the complaint. The plaintiff appealed from the judgment entered on the decision, but not from the order of amendment.

*Held,* that it must be assumed that the order of amendment was properly granted, and that the action submitted to the referee must be regarded as an action brought in the name of the lunatic;

That under the facts it must be assumed that the plaintiff was satisfied to submit the case upon the evidence which was taken before the referee before the amendment of the title of the action; and, hence, that the contention of the plaintiff, that the judgment was void because "there was no proper evidence offered on the part of either the plaintiff or the defendants or received by the referee after the order was granted," could not be sustained.

Three defendants defended the action; one of them appeared and answered by one attorney, and the other two appeared and answered by another attorney. The referee, on dismissing the complaint, awarded two bills of costs.

*Held,* that there was nothing in the record to indicate that the referee erroneously exercised his discretion in respect to the award of costs to the defendants. (Code Civ. Proc. § 3229.)

APPEAL by the plaintiff, " Solon S. Pickert, a lunatic, by Ellen Pickert, as committee of Solon S. Pickert, a lunatic," from a judgment of the Supreme Court in favor of the defendants dismissing the complaint, entered in the office of the clerk of Herkimer county on the 3d day of March, 1892, upon the report of a referee.

The action was originally brought in the name of " Ellen Pickert, as committee of Solon S. Pickert, a lunatic," plaintiff. Thereafter an order was granted permitting the plaintiff to serve an amended summons and complaint by which the designation of the plaintiff was changed to " Solon S. Pickert, a lunatic, by Ellen Pickert, as committee of Solon S. Pickert, a lunatic."

Solon S. Pickert, after the appeal was taken in this case, died, and an order on the 14th of January, 1893, which was amended by an order of the Special Term on the 27th of January, 1893, was made continuing the " action and appeal herein, in the name of Ellen Pickert, as administratrix of the goods, chattels and credits of Solon S. Pickert, deceased, as plaintiff and appellant, against the parties defendant and against Ellen Pickert individually."

The referee, on dismissing the complaint, with costs, awarded costs as follows : " Inasmuch as the defendant Joseph T. Wooster appeared and answered by Devendorf & Smith, his attorneys, and John W. Windecker and Frederick Windecker appeared and answered by their attorney, C. J. Palmer, I conclude each should have costs, to wit, one bill of costs to said defendant Joseph T. Wooster, and one bill of costs to the defendants John W. and Frederick Windecker, and judgment is ordered accordingly."

*George C. Carter*, for the appellant.

*C. J. Palmer* and *Devendorf & Smith*, for the respondents.

HARDIN, P. J.:

In 1891 this action was commenced to partition certain lands described in the complaint, situated in the town of Fairfield, consisting of some sixty-eight acres of land ; and in the complaint it was claimed that Solon S. Pickert, then a lunatic, was the owner of one undivided sixth of the lands sought to be partitioned. On the 12th of January, 1837, John Pickert was seized and possessed of the lands described in the complaint, and on that day died, leaving a last

will and testament, which was probated. He left several children who were provided for by his will. Emilius Pickert, one of his sons, was provided for in the testator's will as follows: "I give and bequeath unto my said other son, Emilius, sixty-eight acres of land, situate in the town of Fairfield, west of the said homestead lot, and on the west side of the Fairfield road, to have and to hold to him for and during his natural life, subject also to the use thereof, as above expressed for one year after my decease and to the charges for half of my debts as above stated." The provision just quoted related to and carried the lands described in the complaint. The said will also contained the further provision: "In case my said son Emilius should have a child or children living at his death, then, in that case, I give and bequeath the aforesaid sixty-eight acres of land bequeathed to him during his life to such child or children, if living, at his death, and to their heirs and assigns forever, to have the remainder after his death and not before, and in case my said son shall die having or leaving no children living or in *ventre sa mère*, then such remainder of said lands and premises, I give, devise and bequeath unto all my other children above named and mentioned and their respective heirs, in case any of them be dead such share as would come to their parents, if living, at the death of my said son as tenants in common and not as joint tenants in fee simple." After the death of John Pickert and the probate of his will, his son Emilius Pickert entered into possession of the sixty-eight acres of land "as a devisee under said will." It was admitted at the trial "that he had a wife and six children the issue of this marriage, and that Emilius afterward died October 8, 1889, leaving no widow, but leaving the following children, his only heirs at law him surviving, to wit, John O. Pickert, Julius Pickert, Lotta E. Putman, wife of Arthur Putman, Elzina Bishop, wife of Lyman Bishop, deceased, Medora Rohan, wife of Patrick Rohan, and Solon S. Pickert." It is obvious from the language of the will of John Pickert, that his son Emilius took only a life estate in the lands in controversy, and that "the remainder after his death" vested in his children by virtue of the terms of the will already stated, and such vested remainder was alienable, and the interest of each child would pass by conveyance thereof. (*Lawrence* v. *Bayard*, 7 Paige, 70; *Mead* v. *Mitchell*, 17 N. Y. 210; *Chrystie* v. *Phyfe*, 19 id. 344;

*Miller* v. *Emans,* 19 id. 384 ; *Moore* v. *Littel,* 41 id. 66 ; *Woodgate* v. *Fleet,* 44 id. 1, and note at p. 20 ; *Taggart* v. *Murray,* 53 id. 238 ; *Smith* v. *Scholtz,* 68 id. 61 ; *Sheridan* v. *House,* 4 Keyes, 569.)

In *Beardsley* v. *Hotchkiss* (96 N. Y. 213) the court, in speaking of a limitation over which created a contingent future estate in expectancy, said that "Before the Revised Statutes the limitation would have been called an executory devise. Now it is more properly called a contingent remainder. Future estates are contingent, while the person to whom, or the event upon which they are limited to take effect, remains uncertain (1 R. S. 723, § 13) ; and such estates are descendible, devisable and alienable in the same manner as estates in possession. (1 R. S. 725, § 35.) In the share given to each child, all the other children, therefore, had a contingent remainder, which they could convey ;" citing *Miller* v. *Emans* (19 N. Y. 384) ; *Moore* v. *Littel* (41 id. 66), and other cases. (*Terry* v. *Wiggins,* 47 N. Y. 512.)

In January, 1875, John W. Windecker resided near the lands in question and owned lands adjacent thereto, and, according to the testimony in the appeal book, he had an interview with Solon S. Pickert in respect to his interest in the sixty-eight acres, and it is inferable that they called upon the late Major Link to draw an instrument in respect thereto, which instrument was executed by them and was acknowledged on the 27th of January, 1875, and was subsequently recorded in the clerk's office of Herkimer county on the 22d day of November, 1878. The instrument in question starts out with a recital referring to the will of John Pickert and the probate thereof, and a declaration that the testator devised to his son Emilius Pickert the sixty-eight acres in question, " to have and to hold said sixty-eight acres during his natural life, subject to certain other provisions in said will contained." The instrument contains a further declaration, " by a subsequent clause and provision in said will the testator further provided that in case his said son Emilius should have a child or children living at his death, that in that case I give and bequeath the aforesaid 68 acres of land to such child or children, if living at his death, and to their heirs and assigns forever, to have the remainder, after his, said Emilius', death." The instrument then contains a further declaration that Solon S. Pickert " desires to sell and dispose of his interest in said real estate described," and then the instru-

ment continues as follows : " Now, therefore, said Solon, the party of the first part, and John W. Windecker, of Fairfield, Herkimer county, State of New York, of the second part, enter into the following covenant and agreement, as follows : The said party of the first part, for and in consideration of the sum of five hundred dollars to him paid by said Windecker, the receipt whereof is hereby acknowledged, does hereby sell, set over, transfer and assign all his right, title and interest in and to said sixty-eight acres of land, and all his share, right, title and interest to the said real estate or any part thereof, of whatever name or nature, to said Windecker, his heirs and assigns forever, and the said party of the first part, in consideration of said sum, for himself, his executors, administrators and heirs, doth hereby also covenant, promise and agree to and with said Windecker, his legal representatives, heirs and assigns, that he will immediately upon the death of his said father, Emilius Pickert, make and deliver to the said Windecker a good and sufficient deed of conveyance, with the usual covenants of warranty, of all his share, right, title and interest in the said sixty-eight acres of land or any part thereof, the title of which shall descend to him by virtue of said will in case of his father's death." A careful consideration of the language found in the instrument, in connection with the circumstances disclosed by the evidence, has left upon our minds no doubt that the intention was that Solon Pickert should convey to Windecker his interest in the premises, and that it was the intention of Windecker to acquire the same by the payment of $500 therefor, as we have seen by one of the sentences already quoted there was a declaration in the instrument that Pickert " desires to sell and dispose of his interest in said real estate described ; " and to effectuate that intention we think the words " does hereby sell, set over, transfer and assign all his right, title and interest in and to said sixty-eight acres of land, and all his share, right, title and interest to the said real estate or any part thereof, of whatever name or nature, to said Windecker, his heirs and assigns forever," were used to, and that they were ample and adequate to, carry the right and title of Solon in the premises derived by him under his grandfather's will. (*Hunt* v. *Johnson*, 44 N. Y. 27). Nor do we think the subsequent language found in the instrument can be

construed to defeat the force and effect of the words just given as words of conveyance. It was known to the parties at the time the instrument was executed that there was a contingency relating to the interest of Solon in the lands, and that the contingency would remain until the death of his father. Apparently, to guard against that contingency, and to reimburse Windecker in case there was a failure of title, subsequent language was used by the parties, in respect to a return of the consideration in the event of the failure of title. Favoring this idea are the words, " And, whereas, there is extreme risk in the advance of so much money upon such a contingent interest, and in order to provide for and secure the said Windecker for the repayment of said principal sum, with interest, and expenses and disbursements which may be made by him under the stipulations of this contract, and interest on said disbursements. * * * Now, therefore, the said party of the first part hereby further covenant, promise and agree to also sell, assign, transfer and set over to said Windecker the aforesaid policy of insurance." We see nothing in the language just quoted, or in the subsequent language of the instrument, that should be held to defeat the language first used, which was sufficient to convey the interest of Solon, in case he survived his father, to the grantee. Being of the opinion that the instrument operated as a conveyance to Windecker, it follows that he was entitled to hold such interest in the lands absolutely, upon the death of Emilius Pickert, and, therefore, Solon S. Pickert had no title to the premises, or interest therein at the time of the commencement of this action. We are not called upon in the determination of the questions now before the court to indicate what rights, if any, Solon had in the policy of insurance in virtue of the stipulations found in the instrument executed by him. Although he made an absolute assignment of the policy, it is insisted that the provisions of the instrument of January, 1875, may be read as giving only such interest in the policy to Windecker as was necessary to secure him against the contingency of the loss of the title of the property, and to reimburse him for any moneys that he might advance or did advance in payment of premiums upon the policy. Upon those questions we are not called upon to pass in determining the question of the plaintiff's right to a partition of the real estate. The foregoing views lead us to approve of the conclusion of law stated by the referee, " that at the time of the

commencement of this action, said Solon S. Pickert had no title or interest in the lands mentioned in the complaint."

(2) It seems that before the final submission of the cause to the referee, the learned counsel for the appellant discovered, as appears by his affidavit, sworn to the 22d of August, 1891, that according to the doctrine laid down in *Burnet* v. *Bookstaver* (10 Hun, 481) and *Skinner* v. *Tibbitts* (13 N. Y. Civ. Proc. Rep. 370), the action ought to be in the name of the lunatic by his committee, instead of in the name of the committee, and applied to the court for leave to amend the summons and complaint, which leave was granted by an order made on the 1st of September, 1891, at Special Term held in Herkimer county, and the summons and complaint as amended and served, with notice of motion, were ordered "to stand without further service of said proposed amended summons and complaint," and the defendants were given twenty days to serve their answer to the amended complaint. As there is no appeal from that order before us, we must assume that it was properly granted, and the right to make such amendment seems to be within the power of the court by the closing language of MULLIN, P. J., in *Burnet* v. *Bookstaver* (*supra*). We must regard the action submitted to the referee as an action brought in the name of the lunatic. By the case it appears that the trial commenced before the referee on the 19th day of July, 1891. After the plaintiff's evidence was put in and several admissions and concessions were made, the case states: "Plaintiff rested subject to right to supply papers hereinbefore mentioned." Defendants then proceeded to put in evidence, and then the case states: "Evidence closed except as to reservation as hereinbefore stated. Adjourned to Monday, July 25, 1891, for argument." Then the case states that July twenty-fifth, "Case called pursuant to adjournment," and the appearance of counsel for the respective parties was entered; thereupon "plaintiff made a motion to adjourn so as to be at liberty to make a motion to amend," etc. The motion was granted, and the case was adjourned to September eighth. The case then states, viz.: "Case called October 21st, 1891. *  *  * Plaintiff does not appear." Although the counsel for the plaintiff did not appear before the referee, the case was "adjourned to November 6th, 1891, at 10 A. M., at office of Mr. Palmer." It appears in the appeal book "November 6th, 1891, case called at

Mr. Palmer's office; attorneys for the defendants appear and the attorney for the plaintiff appeared." It also appears that October 21, 1891, the referee designated November 6, 1891, as the time, and Mr. Palmer's office as the place, for the next hearing, and thereupon the defendants' attorneys gave notice to the plaintiff's attorney that the cause "will be brought to trial" before the referee at the time and place designated, to wit, November 6, 1891, at ten o'clock. Affidavits are inserted in the case showing the service of the notice of hearing on the plaintiff's attorney by the defendants' attorneys. The plaintiff's attorney applied for an adjournment, and, among other grounds, stated that he had not noticed the cause for hearing, and that the cause was not regularly at issue, and that one of the counsel for the plaintiff "is now engaged upon a trial elsewhere, whose attendance is deemed necessary on the trial of this cause." After such application was made, the case states: "The referee does not deem the foregoing legally sufficient to entitle the plaintiff to a postponement of the trial as a matter of right, unless consented to by the attorneys for defendants, who have regularly noticed the trial for this time." Defendants state "they have no objection to further evidence being offered by plaintiff." In the judgment entered March 3, 1892, the following words appear, "and the evidence having been closed, and the case having been submitted to the referee, upon written briefs herein, filed by the plaintiff's attorney herein; and the defendants' attorneys having respectively filed their briefs herein, and the said referee having made his report, wherein he finds and orders that the plaintiff's complaint be dismissed * * * and the said referee, by his report aforesaid, having ordered judgment accordingly" with two bills of costs. We think the position taken by the appellant, "that the report of the referee and the judgment are void," ought not to be sustained; nor the position taken by the appellant, that "there was no proper evidence offered on the part of either the plaintiff or the defendants or received by the referee after the order was granted." Nor do we think the position of the appellant, "that there was no evidence to support" the findings of the referee, can be sustained.

Our attention is called to *Wood* v. *Swift* (81 N. Y. 31). In that case an order was granted bringing in the parties as defendants and directing that the trial continue before the referee "to the same force

and effect as though all parties now to the record had thus been from the beginning of the action." In that case there was an appeal from the order and it was held the order was too broad and the new party had the right to be heard as to the appointment of a referee, and he had the right to be present when the witnesses were sworn and examined. In the case in hand it appears that after the order of September first was made, the plaintiff appeared before the referee and, according to the recitals and the judgment, submitted argument and points, and under the circumstances disclosed by this record ought not to be permitted to overturn the ruling of the referee refusing further adjournment. It may be observed in this connection that the defendants voluntarily consented before the referee to allow the plaintiff to put in further evidence. It must be assumed that the plaintiff was satisfied to submit the case upon the evidence which was then before the referee, inasmuch as, subsequently to that proffer of the defendants the plaintiff submitted arguments and written points to the referee.

(3) We see nothing in the record to indicate that the referee erroneously exercised his discretion in respect to the award of costs to the defendants. (Code Civ. Proc. § 3229 ; *Hodgkins* v. *Mead*, 25 N. Y. St. Repr. 937.)

The judgment must be affirmed, with one bill of costs to the respondents against the appellant.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with one bill of costs to the respondents against the appellant.