### SWEENEY v. WILSON et al.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

WILLS—CONSTRUCTION.

Testator recited in his will that he was the owner of some personalty, and of two parcels of real estate, which had been conveyed to him by A. and M., respectively, but did not mention a lot of which he owned an undivided half in remainder under his father's will. After such recital he devised (clause 2 of the will) all his real estate to his wife for "her natural life, or so long as she shall remain unmarried," and after her death to testator's nephews in fee. By clause 3 he devised to his wife, in case of her marriage, in fee, the real estate conveyed to him by A., and declared that "all her right and interest in the other piece of real estate shall thereupon cease," and that his nephews should "then become the owners in fee and entitled to the possession thereof immediately. By clause 4 he gave to his wife absolutely all the residue of his property, "of every kind and description." *Held*, that it was not testator's intention by clause 4 to give his wife in fee, in case she remarried, the half of the lot of which he was remainder-man under his father's will, but that he intended his nephews, on her remarriage, to take all his real estate except the parcel conveyed to him by A.

Adams and Green, JJ., dissenting.

Appeal from special term, Monroe county.

Action by Margaret Sweeney against John O. R. Wilson and others for partition. From an interlocutory judgment, defendants John O. R. Wilson, Maggie T. Wilson, his wife, and James T. Wilson, appeal. Reversed.

This action was begun May 31, 1895. June 25, 1868, Michael Riley and Julia Wilson, brother and sister, were seised in fee, subject to the life estate of Bridget Riley, their mother (who died intestate February 18, 1885), of part of lot No. 16 on Johnston & Seymour's map of a section of the city of Rochester, N. Y., each being entitled to an undivided half thereof. On that date Michael Riley died at the city of Buffalo, N. Y., leaving, him surviving, Bridget Riley, his mother and sole heir, and Margaret Riley, his widow, then 22 years of age. He left a last will and testament, which was duly probated in the surrogate's court of Erie, and recorded in Book 9 of Wills, at page 530, and in the office of the clerk of the county of Monroe, March 2, 1892, in Book 506 of Deeds, at page 155. The following is a copy of said will:

"I, Michael Riley, of the city of Buffalo, county of Erie, and state of New York, being of sound mind and memory, and of lawful age, do make, publish, and declare this my last will and testament; that is to say: I am the owner of two lots of land, having brick buildings thereon, situate on Canal street, in the city of Buffalo aforesaid, one of which was conveyed to me by Hiram Adams and wife and Orange W. Clark and wife, by deed dated November 27th, 1861, and recorded in Liber 176 of Deeds, at page 523. The other was conveyed to me by Hector McDonald, by deed dated February 1st, 1865, recorded in Erie county clerk's office, in Liber 239 of Deeds, at page 359. And I also own a small amount of personal property. Now, considering the uncertainty

of this life, and wishing to dispose of my property in a manner which seems to me right and proper, therefore, I give, .devise, and bequeath to the St. Vincent Female Orphan Asylum of Buffalo the sum of $500, to be paid in five equal annual installments after my decease, and which I make and declare shall be a lien and charge upon the premises deeded to me by Hector McDonald, and payable out of the rents and income arising from said premises.    Second. I give, devise, and bequeath unto my wife, Margaret Riley, all my real estate and property, to have and to hold to and for her use, and the rents, issues, and profits thereof, during the term of her natural life, or so long as she shall remain unmarried, and after the death of my said wife to the four sons of my sister, Julia Wilson, of the city of Rochester, in fee simple, to be divided between them equally, share and share alike.    Third. In case my said wife shall marry, it is my purpose and will, and I hereby devise and bequeath to her the premises and real estate deeded to me by Adams and Clark, above mentioned, in fee, her heirs and assigns, forever.    And all her right and interest in the other piece of real estate shall thereupon cease and determine.    And my said nephews shall then become the owners in fee, and entitled .to the possession thereof, immediately, subject, however, to the said incumbrance of $1,500; that is, the said legacy of $500 and a mortgage thereon for $1,000. And if the same, or any part thereof, shall have been paid by my said wife, the same shall be repaid to her by my said nephews.    Fourth. All the residue of my property, of every kind and description, I devise and bequeath to my said wife, her heirs and assigns, forever.    Lastly. I nominate and appoint my wife, Margaret Riley, executrix of this my last will and testament, hereby revoking all former wills made by me at any time.

"In witness whereof I have hereunto set my hand and seal this 25th day ot June, 1868.

his<br>
"Michael  X  Riley.  [L. S.]<br>
mark.

"The foregoing instrument, written upon three pages, was subscribed by Michael Riley in our presence, and at the same time he declared the same to be his last will and testament, and each of us signed our names as witnesses at the request of the testator and in his presence.

"P. G. Parker, of Buffalo, N. Y.<br>
"Elen Duffy, of Buffalo, N. Y."

The testator died also seised in fee of the realty described in his will.    At the date of the will, and at the date of the death of the testator, four sons of his sister, Julia Wilson, mentioned in the second clause of his will, were living, to wit: Austin Wilson, who died intestate December 10, 1870, John O. R. Wilson, James T. Wilson, and Henry E. Wilson.    July 22, 1869, Margaret Riley, the testator's widow, and Timothy Sweeney, intermarried.    In 1880 Henry E. Wilson disappeared, has not since been heard of, and is presumed to be dead.    He left William G. Wilson, a son, his sole heir, and Mary B. Wilson, widow, who in 1895 intermarried with Jay O'Neil.    July 28, 1891, Julia Wilson died intestate, seised in fee of an undivided half of said lot, leaving John O. R. Wilson and James T. Wilson, her sons, and William G. Wilson, a grandson, the son of Henry E. Wilson, her deceased son, her only heirs, and William Wilson, her husband.

Margaret Sweeney, formerly the widow of Michael Riley, began this action for a partition of said real estate, making the heirs of Julia Wilson parties defendant, she claiming to be the owner in fee of an undivided half of said lot. The trial court held that the plaintiff took an undivided half of the lot under the fourth clause of the will of Michael Riley, to which decision the appellants excepted.    It was also held that John O. R. Wilson, James T. Wilson, and William G. Wilson were each entitled to a one-third interest in the undivided half of which Julia Wilson died seised.    The lot being incapable of being partitioned, a sale was ordered, and a reference to take and report the accounts of the rents and profits received by the tenants in common, the question of costs being undisposed of.    From the judgment entered on this decision John O. R. Wilson and Maggie T., his wife, and James T. Wilson, have appealed.    William G. Wilson is an infant, and has not appealed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. J. Rodenbeck, for appellants.

B. Frank Dake, for respondent.

FOLLETT, J. The plaintiff concedes that the heirs at law of Julia Wilson are entitled to an undivided half of the lot, and contends that she, under the fourth clause of her husband's will, is entitled as owner in fee of the undivided half thereof of which her husband died seised. The heirs of Julia Wilson assert that they are entitled, not only to the undivided half formerly owned by her, but are also entitled as owners in fee of the undivided half of which their uncle, Michael Riley, died seised, by virtue of the second and third clauses of his will.

It will be observed that two pieces of real estate in the city of Buffalo are described in the first clause of the will. One was conveyed to the testator by Adams and Clark, and the other was conveyed to him by McDonald, the latter of which is charged with the payment of a legacy of $500 to the St. Vincent Female Orphan Asylum of Buffalo. By the second clause the testator devised and bequeathed all his real estate and property to his wife for life, or so long as she should remain unmarried, and after her death to the four sons of his sister, Julia Wilson, in fee, to be divided equally among them. This clause is unambiguous, except in respect to the duration of the widow's estate, and by it, standing alone, she would take the use of the estate so long as she remained unmarried, or for life, and the nephews the fee after her marriage or death. The second clause is modified by the third, the third providing that, in case the testator's widow marries, the fee of the real estate deeded to him by Adams and Clark shall pass to her, her heirs and assigns, forever, and that her right in the other piece of real estate conveyed to him by McDonald shall then cease, and that his four nephews shall then become the owners in fee and entitled to the possession thereof, subject to the legacy of $500 charged thereon and to a mortgage of $1,000. The second and third clauses of the will, read together, are unambiguous, so far as they relate to the two parcels of land described in the will; and by those clauses, upon the marriage of Margaret Riley, she became entitled to the fee of the land conveyed to her husband by Adams and Clark, and the nephews to the fee and possession of the piece conveyed to him by McDonald.

I am unable to see any ambiguity in the second and third clauses in respect to the disposition of the fee of the real estate owned by the testator other than that specifically referred to in the will. By the second clause he devises all of his real estate to his wife "during the term of her natural life, or so long as she shall remain unmarried, and after the death of my said wife to the four sons of my sister, Julia Wilson, of the city of Rochester, in fee simple, to be divided between them equally, share and share alike." This language is broad enough to embrace and carry all of the testator's real estate, wherever situated, and by it the fee vested in his nephews on his death; their right of possession being postponed until the termina-

tion of the estate of his widow. The only ambiguity in the second clause lies in the words "during the term of her natural life, or so long as she shall remain unmarried, and after the death of my said wife." It seems to me that the words "or so long as she shall remain unmarried" qualify the preceding and succeeding words of the sentence, and limit the right of the widow to the use of the estate to the period of her widowhood, and that, upon her remarriage, she took the fee of the land conveyed to the testator by Adams and Clark in lieu of the use of the testator's entire estate. I do not think the testator intended to offer his widow a premium, or a pecuniary inducement, to remarry, by giving to her on that event the fee of part of his realty and continuing her right to use the remainder, except the lot conveyed to him by McDonald, during her life, but that his intention was that, upon her remarriage, his nephews should take the fee, with the right to the immediate possession of all his realty except that conveyed to him by Adams and Clark. Such seems to me to be the natural construction of the second and third clauses.

It is urged that the testator, when he executed his will, did not know, or, if he had known, had forgotten, that he had an interest in this lot, and in the adjoining lot, involved in the other action. This seems an unwarranted presumption. The testator's father acquired title to this lot by a deed dated April 3, 1837, which was recorded in the office of the clerk of the county of Monroe in Book 41 of Deeds, at page 280. His father had owned this real estate for more than 20 years before his death, which occurred February 9, 1859. He left a will by which he devised this lot to his widow for life, and on her death to his son, Michael Riley, and to his daughter, Julia Riley, afterwards Julia Wilson. When the testator executed his will, he had no right of possession to the lot involved in this action, because his mother, the life tenant, was then living (she died February 18, 1885, 16 years later), and perhaps for this reason special reference was not made to it in his will. The testator was nominated as the executor of his father's will. It was not probated until July 22, 1881, 13 years after the death of his son Michael, the executor therein nominated. In whose custody this will was, after the death of the elder Michael and before it was probated, does not appear. I find nothing in the case justifying the presumption that Michael Riley, the son, did not know of his interest in the Rochester lot; but, even though he did not know of it, the language of the second clause of the will is sufficient to devise it.

The residuary clause under which the plaintiff claims carries nothing. All of the testator's property was disposed of by the preceding clauses, and there is nothing in the residuary clause which limits or cuts down the devises previously made. The result is that the plaintiff took no estate in the lot in question, under the will of her husband, which survived her marriage. Her right to dower was not considered in the court below, nor has it been discussed by counsel on this appeal.

The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the final award of costs.

HARDIN, P. J., and WARD, J., concur.

ADAMS, J. (dissenting). I find myself unable to yield my assent to the conclusion reached in the prevailing opinion in this case, for the reason that the construction given by the trial court to the will of Michael Riley, Jr., is more in harmony with my views. In attempting to give effect to this instrument, it may be well, as it certainly will prove helpful, to have recourse to one or two familiar canons of construction, one of which is to first ascertain, if possible, the general scheme or intent which the testator had in mind in disposing of his property (Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933), and having done this, to accomplish such intent, if possible, by giving effect to each and every provision of the will (Chrysti v. Phyfe, 19 N. Y. 344–348; Taggart v. Murray, 53 N. Y. 233). It seems to me quite clear, from a careful reading of the instrument in question, that it was formulated and executed upon the assumption that the testator's estate consisted principally, if not entirely, of the two lots situate on Canal street, in the city of Buffalo, "and a small amount of personal property," mentioned in the recital which precedes the disposing clauses; that, having thus specifically inventoried his supposed estate, the testator proceeded to make disposition of the same by first bequeathing to the St. Vincent Female Orphan Asylum of Buffalo the sum of $500, and charging such legacy upon the Hector McDonald lot, and then devising and bequeathing unto his wife, Margaret Riley, all his real and personal estate and property, for the term of her natural life, or so long as she shall remain unmarried. This much accomplished, there follows the third clause, which contains the modifying provision that, in case his wife shall remarry, she shall take the "Adams and Clark lot" in fee, and that her right and interest "in the other piece of real estate shall thereupon cease and determine." It is further provided that the nephews and nieces of the testator shall, in the event first mentioned, take the fee of the McDonald lot subject to a mortgage of $1,000 and the legacy of $500 to the orphan asylum.

It is true that in the second clause the testator gives "all" his real estate and property to his wife, and, strictly speaking, this would ordinarily dispose of the entire estate. But it is quite obvious that the word quoted relates simply to all the estate and property which had been heretofore mentioned, and not to all which the testator might possibly possess; for, after providing that his widow should, in the event of her marriage, take the fee of the Adams and Clark lot, and cease to have any interest in "the other piece of real estate," he directs that his nephews and nieces "shall then become the owners in fee and entitled to the possession thereof immediately,"—that is, they shall take the McDonald lot, and not the residue of his estate. In this view of the case, and in this manner only, can effect be given to the fourth or residuary clause of the will; for it is to be observed that, as is generally the case, the testator, after disposing of the bulk of his estate, in order to guard against intestacy as to any portion thereof, devises and bequeaths all the residue of his property of every kind and description to his wife, and her heirs and assigns,

45 N.Y.S.—71

forever. It is not to be assumed that this residuary clause is mere surplusage, or that it was incorporated into the will without some well-defined object upon the part of the testator; nor is it to be so construed as to render it meaningless and of no effect, if such a result can be avoided. On the contrary, it is the duty of the court, in construing the same, to look at the entire instrument, as well as all the circumstances surrounding its execution, in order that a proper interpretation may be arrived at. Kerr v. Dougherty, 79 N. Y. 327.

Taking the will as a whole, therefore, I am of the opinion that it clearly appears that it was the intention of the testator to dispose of the two Buffalo lots and his personal property only by the first three clauses of that instrument, and then to devise and bequeath the residue of his estate, if any there should be, by the fourth or residuary clause. If this view can properly be entertained, resort may then be had to still another rule of construction, which is that in such circumstances the language of the will may be subordinated to the intent of the testator. Phillips v. Davies, 92 N. Y. 199.

GREEN, J., concurs.